IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 122,253

STATE OF KANSAS,
*Appellee*,

v.

ROBERT CASH SCHEUERMAN,
*Appellant*.

SYLLABUS BY THE COURT

1.

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. This assessment begins with the plain language of the statute, giving common words their ordinary meaning. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language. If a statute's language is ambiguous, a court will consult the canons of construction to resolve the ambiguity.

2.

An otherwise clearly written statute may still manifest ambiguity when applied to the facts of a case.

3.

Challenges to the sufficiency of the evidence in a criminal case are reviewed in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. When a trial proceeds on stipulated facts, appellate courts conduct a de novo review for sufficiency of the evidence, again viewing the facts in a light most favorable to the State.

1

4.

The test for the sufficiency of the evidence to support a conviction is distinct from—although related to—the "factual appropriateness" test for the giving of lesser included offense instructions.

5.

When the elements of a lesser included offense are wholly contained within the elements of a greater offense, evidence that would be sufficient to support a conviction for the greater offense also supports a conviction for the lesser.

6.

The plain language of K.S.A. 2020 Supp. 21-5705(a)(1) and (d) reflects the legislative intent to criminalize the possession of "any" amount of methamphetamine. The only difference between the four possible felony classifications for this crime lies in the amount of methamphetamine possessed. Consequently, the quantitative ranges of lesser included offenses under this statute are wholly contained within the quantitative ranges of greater offenses.

7.

Under the Fourth Amendment to the United States Constitution and section 15 of the Kansas Constitution Bill of Rights, an individual must have a sufficient interest in an area searched—often called "standing"—before they can challenge the validity of a law enforcement search of that area.

8.

An individual's status as a passenger in a car, without more, does not provide Fourth Amendment "standing" to challenge a search of that car by law enforcement.

Review of the judgment of the Court of Appeals in 60 Kan. App. 2d 48, 486 P.3d 676 (2021). Appeal from Barton District Court; CAREY L. HIPP, judge. Opinion filed January 14, 2022. Judgment of the Court of Appeals affirming in part, reversing in part, and vacating in part the judgment of the district court is affirmed in part and reversed in part. Judgment of the district court is affirmed.

*Randall L. Hodgkinson,* of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Michael J. Duenes*, assistant solicitor general, argued the cause, and *J. Colin Reynolds*, assistant county attorney, *M. Levi Morris*, county attorney, and *Derek Schmidt,* attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

WILSON, J.:  After a panel of the Kansas Court of Appeals reversed Robert Cash Scheuerman's conviction for possession of methamphetamine under K.S.A. 2016 Supp. 21-5705(a)(1) and (d)(3)(B) for insufficient evidence based upon the parties' stipulation of facts, the State petitioned this court for review. Scheuerman also conditionally cross-petitioned this court for review of the panel's conclusion that he lacked Fourth Amendment "standing" to challenge the search of a vehicle in which he was a passenger. We granted both the petition and the conditional cross-petition.

Upon consideration of the parties' arguments, we reverse the Court of Appeals panel on the sufficiency of the evidence and affirm its determination that Scheuerman cannot challenge the search of the vehicle. We thus affirm Scheuerman's conviction.

FACTS AND PROCEDURAL BACKGROUND

The facts of the case are well summarized by the panel below. In brief, Barton County Sheriff's Office Detective Sergeant David Paden stopped a vehicle on a rural road

outside of Great Bend, Kansas, on August 8, 2016. Officers were on the lookout for Scheuerman, who was a passenger in the vehicle driven by his girlfriend, Gwen Finnigan. After Paden signaled for her to pull over, Finnigan brought the vehicle to a stop in the traffic lane because there was a "very deep ditch" and "very little shoulder" on which to pull over.

Officers then ordered Finnigan to get out. She complied, walking over to the officers. But as Paden and another officer, Sergeant Lloyd Lewis, approached the car, they discovered that Scheuerman was holding a gun to his own head. One officer then removed Finnigan from the scene for her safety, ultimately transporting her to the Barton County Jail; the remaining officers talked to Scheuerman. After a period of impasse, Scheuerman was eventually convinced to put down the gun and leave the car. After he had done so, officers took him into custody. According to Paden, Scheuerman stated that any "dope" in the car was his, not Finnigan's.

Because Finnigan was still at the jail when Scheuerman was taken into custody, there was no lawful driver on scene to whom the officers could release the car. And because the car was parked in a traffic lane, officers could not leave it unattended without turning it over to a lawful driver—so they impounded it. Lewis retrieved the gun—which Scheuerman had left in the car—and performed an "inventory" search of the car prior to impound. During the search, Lewis found a backpack which contained "numerous items of drug paraphernalia and drugs."

The State charged Scheuerman with six counts relating to his possession of illicit substances and a firearm. Scheuerman filed a motion to suppress, challenging both the stop itself and the lawfulness of the search of the car. After hearing testimony from officers and from Scheuerman himself, the district court denied Scheuerman's motion. The district court reasoned that Scheuerman's disclosure that the vehicle held "dope"

4

prevented law enforcement from releasing the car to Finnigan without "search[ing] that car for anything that might be hazardous and certainly anything that might be illegal."

Eager for a resolution of the suppression issue on appeal, the parties submitted a joint factual stipulation for the district court's consideration on March 18, 2019. Specifically, the parties made this submission "for the Court to determine the defendant's guilt or innocence by an uncontested bench trial on the following stipulated facts" with the intent to "frame legal issues associated with this matter" for an appeal, should the court find Scheuerman guilty. The parties' stipulation provided:

"1.     That on August 8, 2016, Detective Paden, Detective Sargent [*sic*] of the Barton County Sheriff's Office, made a traffic stop of a passenger vehicle which the defendant was a passenger.

"2.     That on August 8, 2016 the defendant was taken into custody during the traffic stop.

"3     That on August 8, 2016, after being taken into custody, the defendant was found to be in possession of at least 3.5 grams but less than 100 grams of methamphetamine as confirmed by KBI lab testing.

"4.     That the above-mentioned events occurred in rural Barton County, Kansas on the 8th day of August, 2016."

Shortly before the bench trial, the State moved to dismiss five counts against Scheuerman and to reduce Count I "to a severity level 3 drug felony." These modified charges were "part of the agreement" pertaining to the stipulated facts; indeed, Scheuerman's counsel represented that "there's a pretrial issue that we're intending on appealing, and that was how we came to this agreement for the severity level of the crime."

In a Memorandum of Decision issued after trial, the district court found Scheuerman guilty of possession of methamphetamine with intent to distribute under

K.S.A. 2016 Supp. 21-5705(a)(1) and (d)(3)(B). The district court ultimately sentenced Scheuerman to 73 months in prison, with 36 months' postrelease supervision. Scheuerman then appealed.

On appeal, the panel bypassed the district court's basis for denying Scheuerman's motion to suppress by concluding that, as a passenger, he lacked "standing" to challenge the search in the first place. *Scheuerman,* 60 Kan. App. 2d at 51-53. But then the panel reversed Scheuerman's conviction for insufficient evidence, concluding that the parties' stipulation—that Scheuerman possessed "at least 3.5 grams of methamphetamine"— could not support a conviction for possession of *less* than 3.5 grams of methamphetamine, the gravamen of the amended Count I. 60 Kan. App. 2d at 58-59.

The State filed a petition for review, and Scheuerman filed a conditional cross-petition for review. The court granted both.

ANALYSIS

*The panel incorrectly concluded that Scheuerman's conviction was not supported by sufficient evidence.*

We first address the State's sole issue, which challenges the panel's determination that the parties' stipulation to a range quantity of methamphetamine, greater than that required for the charged crime, constituted insufficient evidence to support Scheuerman's conviction.

*Standard of review*

The State's argument implicates both the standard of review as to sufficiency of the evidence and as to statutory construction. The latter raises a question of law, which is reviewed de novo. E.g., *State v. Thurber*, 313 Kan. 1002, 1005, 492 P.3d 1185 (2021).

> "The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. In ascertaining this intent, we begin with the plain language of the statute, giving common words their ordinary meaning. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. But if a statute's language is ambiguous, we will consult our canons of construction to resolve the ambiguity. [Citations omitted.]" *Johnson v. U.S. Food Serv.*, 312 Kan. 597, 600-01, 478 P.3d 776 (2021).

An apparently clear statute may nevertheless manifest ambiguity when applied to the particular facts of a case. Cf. *State v. Walker*, 280 Kan. 513, 523, 124 P.3d 39 (2005).

Challenges to the sufficiency of the evidence in a criminal case are reviewed in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. When a trial proceeds on stipulated facts, appellate courts conduct a de novo review for sufficiency of the evidence, again viewing the facts in a light most favorable to the State. *State v. Darrow*, 304 Kan. 710, 715, 374 P.3d 673 (2016).

*Discussion*

The parties stipulated "[t]hat on August 8, 2016, after being taken into custody, the defendant was found to be in possession of at least 3.5 grams but less than 100 grams of

methamphetamine as confirmed by KBI lab testing." But "[a]s part of the agreement" of the parties, the State reduced the charge against Scheuerman from a severity level 2 drug felony to a severity level 3 drug felony, as set forth in K.S.A. 2020 Supp. 21-5705(a)(1) and (d)(3)(B).

The panel acknowledged that "[a]s it relates to lesser included offenses whose elements are wholly contained within the originally charged crime, . . . if the facts are sufficient to convict of the charged crime, the facts are also sufficient to convict of a lesser included crime." *Scheuerman,* 60 Kan. App. 2d at 56. But, while the panel reasoned that the amended charge here was "clearly a lesser included offense of the originally charged crime," it concluded that the amended charge's elements "are not all contained within the originally charged crime" under K.S.A. 2020 Supp. 21-5109(b)(2). 60 Kan. App. 2d at 56-57. Critically, the panel focused on what it perceived to be a strict elemental separation between the four subsections of K.S.A. 2020 Supp. 21-5705(d)(3) based on quantity, reasoning that "[t]he amended charge's quantity element requires possessing at least 1 gram but less than 3.5 grams of methamphetamine, while the originally charged crime requires possessing at least 3.5 grams but less than 100 grams." 60 Kan. App. 2d at 57.

We begin by examining the relevant portion of K.S.A. 2020 Supp. 21-5705:

"(a) It shall be unlawful for any person to distribute or possess with the intent to distribute any of the following controlled substances or controlled substance analogs thereof:

(1) Opiates, opium or narcotic drugs, or any stimulant designated in subsection (d)(1), (d)(3) [i.e., methamphetamine] or (f)(1) of K.S.A. 65-4107, and amendments thereto;

. . . .

8

"(d) . . . .

. . . .

(3) Violation of subsection (a) with respect to material containing any quantity of . . . methamphetamine, as defined by subsection (d)(3) or (f)(1) of K.S.A. 65-4107, and amendments thereto, or an analog thereof, is a:

(A) Drug severity level 4 felony if the quantity of the material was less than 1 gram;

(B) drug severity level 3 felony if the quantity of the material was at least 1 gram but less than 3.5 grams;

(C) drug severity level 2 felony if the quantity of the material was at least 3.5 grams but less than 100 grams; and

(D) drug severity level 1 felony if the quantity of the material was 100 grams or more."

The statute appears clear. By its plain language, the amount of methamphetamine possessed—expressed as a range of grams—points specifically to the applicable crime. Possession with intent to distribute more than 3.5 grams of methamphetamine, but less than 100 grams of methamphetamine, is a drug severity level 2 felony. Scheuerman stipulated he possessed that amount, which establishes that he was guilty of the level 2 felony.

But Scheuerman was not charged with a level 2 felony. Because he consented to a court trial on stipulated facts, the prosecutor agreed to charge Scheuerman with the less serious level 3 felony, which required a lesser amount of methamphetamine for conviction. Thus, if the plain language of the statute means Scheuerman must be guilty of the crime within the matching quantitative parameters, and no other, then Scheuerman must be found not guilty of the crime charged and go free. This is what Scheuerman argues, and this is what the panel held.

The amounts of methamphetamine are specifically ascribed to a crime level, but if a person possesses a great amount of methamphetamine, it seems obvious that he also

possesses a small amount of methamphetamine. How, then, could someone be guilty of possessing a large amount but not guilty of possessing a smaller amount? Logically, he cannot. Thus, the facts of this case, when applied to the statute, reveal an ambiguity in what at first seems clear from the statute's plain language—an ambiguity that lies not in the amounts, but in how the amounts are to be considered in relation to each other. See *State v. Walker*, 280 Kan. 513, 522-23, 124 P.3d 39 (2005) (despite apparently clear and unambiguous statutory language, application to the facts of the case revealed ambiguity necessitating further interpretation). In other words, are the amounts set forth in the different levels to be considered as mutually exclusive or cumulative? The panel's holding necessarily concludes that the amounts are mutually exclusive. Under this reasoning, since Scheuerman had more methamphetamine than the range specified by the lesser crime, he cannot be convicted of the lesser crime.

Because the statute is ambiguous in its application, we turn to the canons of construction to resolve whether the Legislature intended the amounts set forth to be considered as cumulative or mutually exclusive. To do that, we need go no further than to consider which option leads to an absurd result. *State v. Toliver*, 306 Kan. 146, 154, 392 P.3d 119 (2017) (interpreting an ambiguous term to avoid an "unreasonable or absurd result"). Cf. *Kelly v. Legislative Coordinating Council*, 311 Kan. 339, 354, 460 P.3d 832 (2020) (Stegall, J., concurring) ("We have said before that we may depart from our strict adherence to the plain text of a law if that plain reading produces obviously absurd results."). Here, we conclude that an absurdity results if one cannot be guilty of possession with intent to distribute methamphetamine because he has *too much* methamphetamine. If someone possesses at least 3.5 grams of methamphetamine, that person also necessarily possesses at least 1 gram of methamphetamine. Logically, if the amounts are to be considered as cumulative, the charges must likewise be considered to be cumulative, rather than mutually exclusive. Thus, someone who has 3.5 grams of methamphetamine may be found guilty of a level 2 felony, a level 3 felony, or even a level 4 felony (which only requires some measurable amount of methamphetamine).

10

The legislative intent that the amounts are to be treated as cumulative, and not mutually exclusive, is further evinced by K.S.A. 2020 Supp. 21-5705(a), which indicates plainly that possession of "any" methamphetamine with intent to distribute is a felony at *some* level. See *State v. Gensler*, 308 Kan. 674, 680, 423 P.3d 488 (2018) (even where a criminal statute is ambiguous, the rule of lenity does not require the court to give effect to an absurd interpretation of a statute). Our holding means that a prosecutor has the discretion to charge a crime less than the maximum allowed by the quantity of methamphetamine possessed, if that prosecutor believes the circumstances justify it.

We note the cases relied on by the panel to the contrary but find them distinguishable. For instance, in *State v. Winn*, No. 111,474, 2016 WL 1169422, at *8 (Kan. App. 2016) (unpublished opinion), the court concluded that, where the State proved that the defendant possessed 622 grams of marijuana, there was no evidence that the defendant possessed an amount less than 450 grams for purposes of establishing factual appropriateness. But Winn did not challenge the amount of the marijuana found—he merely argued that he planned to consume it, rather than distribute it, and thus if the jury "found he would have smoked more than 172 grams and distributed the rest, it could have found him guilty of [the lesser] offense." *Winn,* 2016 WL 1169422, at *8.

Likewise, in *State v. Palmer*, No. 110,624, 2015 WL 802733, at *1 (Kan. App. 2015) (unpublished opinion), the defendant possessed 10.26 grams of methamphetamine in his shoe. The defendant argued that a lesser included offense instruction on possession of *less* than 3.5 grams of methamphetamine with intent to distribute would have been appropriate based on "some evidence that at least a portion of the methamphetamine found in his possession was for his personal use rather than for distribution[.]" *Palmer,* 2015 WL 802733, at *7. The panel rejected the defendant's argument that lesser included instructions should have been given because "K.S.A. 2014 Supp. 21-5705 only requires

proof of the quantity of a controlled substance found in a defendant's possession, not the quantity that the defendant may have intended to distribute." 2015 WL 802733, at *7.

Neither case supports the strict separation of quantitative elements that the panel extrapolated for purposes of evaluating evidentiary sufficiency, nor involved an evidentiary challenge to the amount of contraband possessed. *Scheuerman,* 60 Kan. App. 2d at 58. Instead, both cases involved challenges to a defendant's *intentions* concerning certain parts of the contraband. *Winn*, 2016 WL 1169422, at *8 (evidence was presented that defendant possessed 622 grams of marijuana, and defendant "did not challenge that evidence as to weight"); *Palmer*, 2015 WL 802733, at *7 ("There is no dispute here that law enforcement discovered 10.26 grams of methamphetamine in Palmer's shoe."). In other words, *Winn* and *Palmer* were both claiming that "I may have a lot of drugs, but you can only count the part that I intended to distribute and not also that part that I intended to consume myself." Such a claim has no application here.

Neither *Winn* nor *Palmer* were reviewed by this court. Thus, their holdings would not constrain us in any case. But we note that the test for the sufficiency of the evidence to support a conviction is distinct from—although related to—the "factual appropriateness" test for the giving of lesser included offense instructions. See, e.g., *State v. McClanahan*, 254 Kan. 104, 115, 865 P.2d 1021 (1993) ("A question of the sufficiency of evidence on the greater offense does not affect the inquiry into the need to instruct on the lesser included offense."). As the Kansas Supreme Court has said of the factual appropriateness analysis for jury instructions:

> "Such an inquiry is closely akin to the sufficiency of the evidence review frequently performed by appellate courts in criminal cases where 'the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' Of course, where the defendant has requested the lesser included offense instruction, the evidence should be viewed in the light most

favorable to the defendant. But deference is given to the factual findings made below, in the sense that the appellate court generally will not reweigh the evidence or the credibility of witnesses. [Citations omitted.]" *State v. Plummer*, 295 Kan. 156, 162, 283 P.3d 202 (2012).

Because these questions of factual sufficiency and factual appropriateness are distinct, we leave for another day the matter of whether a specifically defined quantity of substance, alone, may constitute "some evidence" that would *reasonably* justify a lesser included offense *instruction* under K.S.A. 22-3414(3). Cf. *State v. Louis*, 305 Kan. 453, 459, 384 P.3d 1 (2016) (evaluating failure to give arguably factually appropriate lesser included offense instruction under harmlessness paradigm based on "overwhelming evidence" of the greater offense that would eliminate any "reasonable probability" of a conviction on the lesser offense). Instead, we conclude only that, where the undisputed evidence establishes the possession of a *greater* quantity of contraband than a charged crime encompasses, that evidence is sufficient to establish the possession of the amount contemplated by the charged crime.

Consequently, we reverse the Court of Appeals panel with respect to its conclusion that Scheuerman's conviction was not supported by sufficient evidence. We affirm the district court on this point.

*The panel correctly concluded that Scheuerman's status as a passenger did not confer "standing," for purposes of the Fourth Amendment, to challenge the search of the car.*

We next turn to Scheuerman's sole issue: whether his status as a passenger was sufficient to enable him to challenge the search of the vehicle driven by Finnigan.

13

*Standard of review*

As the court has previously written,

> "Reviewing a district court's decision on a motion to suppress requires the application of a bifurcated standard. The appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence, and then the ultimate legal conclusion is reviewed using a de novo standard. In reviewing the factual findings, the appellate court does not reweigh the evidence or assess the credibility of witnesses. 'Substantial competent evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion.' [Citations omitted.]" *State v. Doelz*, 309 Kan. 133, 138, 432 P.3d 669 (2019).

A district court's refusal to suppress evidence is subject to review for harmless error. E.g., *State v. Thornton*, 312 Kan. 829, 831, 481 P.3d 1212 (2021). Additionally, issues regarding a party's standing to challenge a search constitute questions of law and are thus subject to de novo review. E.g., *State v. Gilbert*, 292 Kan. 428, 431, 254 P.3d 1271 (2011).

*Discussion*

Under the Fourth Amendment to the United States Constitution and section 15 of the Kansas Constitution Bill of Rights, an individual must have a sufficient interest in an area searched—often called "standing"—before they can challenge the validity of a law enforcement search of that area. E.g., *State v. Dannebohm*, 308 Kan. 528, 532-33, 421 P.3d 751 (2018). These rights "are personal, and defendants may not vicariously assert them." *Dannebohm*, 308 Kan. at 533. To claim these protections, "defendants must establish that they have a subjective expectation of privacy in the area searched and this expectation must be objectively reasonable." 308 Kan. at 533. Put another way, "To establish a sufficient interest to have standing to challenge the legality of a search, the

challenger must claim either to have a proprietary or possessory interest in the premises searched or to have owned or possessed the seized property." *State v. Richard*, 300 Kan. 715, Syl. ¶ 2, 333 P.3d 179 (2014). A passenger's Fourth Amendment rights "are implicated when the vehicle he or she is occupying is stopped, and this enables the passenger to challenge the constitutionality of that stop," but such rights "are not implicated during the search of an automobile he or she neither owns nor claims a possessory interest in, even if the evidence obtained during the search is used against the defendant later." *Gilbert*, 292 Kan. at 435.

Scheuerman argues that recent caselaw has clarified the nature of a passenger's reasonable expectation of privacy in a vehicle as akin to a "social guest." Scheuerman points to *Byrd v. United States*, 584 U.S. ___, 138 S. Ct. 1518, 1528, 200 L. Ed. 2d 805 (2018), and *Minnesota v. Carter*, 525 U.S. 83, 90, 119 S. Ct. 469, 142 L. Ed. 2d 373 (1998), which he reads in the aggregate to support a claim that vehicular passengers have standing to contest a search of a vehicle on the broad theory that they are social guests. In Scheuerman's formulation, if social guests have enough of a reasonable expectation of privacy to enable them to challenge the search of a home, and vehicular passengers are essentially social guests, then passengers should have enough of a privacy expectation to challenge a search of the car in which they ride.

The recognition that social guests may have a reasonable expectation of privacy in another's home—and, thus, standing to contest a search there—is not new. See, e.g., *State v. Talkington*, 301 Kan. 453, 473-83, 345 P.3d 258 (2015) (discussing the development of the "social guest" standing theory). But, as *Byrd* noted and as Scheuerman admits, more weight is given to an individual's expectation of privacy in their home than in their car. *Byrd*, 138 S. Ct. at 1526 (citing *California v. Acevedo*, 500 U.S. 565, 579, 111 S. Ct. 1982, 114 L. Ed. 2d 619 [1991]).

This disparity forms the core problem with Scheuerman's argument. *Byrd* clarified that there is no bright line holding "that passengers cannot have an expectation of privacy in automobiles," but it focused on "the expectation of privacy that comes from lawful possession and control and the attendant right to exclude" as the source of standing to challenge a search. 138 S. Ct. at 1528. See also *United States v. Young*, 289 F. Supp. 3d 299, 301-02 (D. Mass. 2018) (where defendant "did not own or have a possessory right over the vehicle . . . [and] was not the driver of the vehicle on the day it was searched," she had no reasonable expectation of privacy in the searched vehicle even though she "had been a passenger for a number of hours, had travelled in the car previously, and had left her cell phone locked in the vehicle"); *United States v. Lewis*, No. 19-20014-CM, 2019 WL 3430603, at *4 (D. Kan. July 30, 2019) (focusing on control of a vehicle and possessory interest in a vehicle as sufficient to confer standing to challenge a search). Cf. *United States v. Woodrum*, 202 F.3d 1, 6 (1st Cir. 2000) (In challenging a vehicle stop, "[a] taxi fare—who by definition has contracted to pay for both the right to exclude others from the cab and the right to control its destination in certain respects—has a reasonable expectation that he will not gratuitously be seized while en route."). In one case, for instance, the following factors were deemed "relevant to a privacy expectation: legitimate presence in the area searched, possession or ownership of the area searched or the property seized, prior use of the area searched or the property seized, ability to control or exclude others' use of the property, and a subjective expectation of privacy." *United States v. Lochan*, 674 F.2d 960, 965 (1st Cir. 1982).

Scheuerman's arguments demonstrate neither a right of lawful possession nor control of the vehicle. While the evidence showed he paid for the car, the car nevertheless belonged to his girlfriend, Finnigan. Finnigan, not Scheuerman, was driving the car at the time of the stop, and Scheuerman presented no evidence that he had any right to control the car or to exclude others from it at any time. And while some of Paden's testimony could support an inference that Scheuerman had used the vehicle in the past—at least enough to be associated with it by law enforcement—that alone does not support a

16

finding that Scheuerman had a reasonable expectation of privacy in the car. Consequently, we affirm the panel's conclusion that Scheuerman lacked Fourth Amendment "standing" to challenge the search.

CONCLUSION

We reverse the Court of Appeals panel with respect to the sufficiency of the evidence supporting Scheuerman's conviction and affirm the panel as to its conclusion that Scheuerman cannot challenge the underlying search of the vehicle. We thus affirm Scheuerman's conviction and sentence.