NOT DESIGNATED FOR PUBLICATION

No. 126,361

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMES CARL JONES,
*Appellant*.

MEMORANDUM OPINION

Appeal from Barton District Court; CAREY L. HIPP, judge. Submitted without oral argument. Opinion filed July 12, 2024. Affirmed in part, reversed in part, and sentence vacated in part.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Ethan C. Zipf-Sigler*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before COBLE, P.J., SCHROEDER and CLINE, JJ.

PER CURIAM: James Carl Jones was on his way home from Colorado when he was stopped for having a defective tag light. The resulting stop and search of his car revealed Jones had purchased a large quantity of marijuana in Colorado. Jones was convicted at his jury trial of one count each of possession of marijuana, possession of marijuana without a drug tax stamp, and possession of drug paraphernalia. Jones now timely appeals, claiming (1) the district court erred in denying his motion to suppress the marijuana evidence based on an unlawful vehicle search; (2) the evidence to support his convictions of possession of marijuana and possession of marijuana without a drug tax

1

stamp was insufficient to show the substance he possessed was marijuana according to the statutory definition; and (3) the convictions of possession of marijuana and possession of marijuana without a drug tax stamp are multiplicitous. Jones further suggests the district court erred in denying his motion for directed verdict as to the State's original charge of possession of marijuana with intent to distribute and to the drug tax stamp violation.

We affirm the district court's denial of Jones' motion to suppress based on the plain view doctrine and the exigent circumstances exception to a warrant. We find the convictions of possession of marijuana and possession of marijuana with no drug tax stamp are multiplicitous based on the specific facts of this case. Jones' conviction of possession of marijuana is reversed and the sentence for that conviction must be vacated. Accordingly, the issue of whether the district court erred in denying Jones' motion for judgment of acquittal as to the State's original charge of possession of marijuana with intent to distribute is moot. However, the State presented sufficient evidence to uphold Jones' conviction of possession of marijuana with no drug tax stamp, and the district court did not err in denying Jones' motion for directed verdict given the fact question for the jury related to that charge.

We affirm in part, reverse in part, and vacate the sentence in part.

FACTUAL AND PROCEDURAL BACKGROUND

In November 2021, a road patrol deputy with the Barton County Sheriff's Office conducted a traffic stop based on an illegally colored tag light. While conducting the traffic stop, the deputy identified Jones as the driver of the vehicle and saw what looked like a red one-hit pipe sitting in plain view on the top of a cigarette holder in the cupholder of the vehicle. The deputy testified she knew the pipe was a marijuana pipe based on her training and experience. Jones was asked by the deputy for permission to

search the vehicle, and he refused. However, based on observing the marijuana pipe, the deputy searched the vehicle. The search revealed:

(1)     The pipe was in fact a one-hit pipe generally used for marijuana;

(2)     marijuana in the center console of the vehicle;

(3)     tools generally used to stuff pipes;

(4)     a small black container labeled for marijuana with a warning label for tetrahydrocannabinol (THC);

(5)     a brown bag with eight more black containers with THC labels on them; and

(6)     a large vacuum-sealed bag with marijuana.

The State charged Jones with one count each of possession of marijuana with intent to distribute under K.S.A. 2021 Supp. 21-5705(a)(4), possession of marijuana with no drug tax stamp under K.S.A. 79-5204, and possession of drug paraphernalia under K.S.A. 2021 Supp. 21-5709(b)(2). A Kansas Bureau of Investigation (KBI) report confirmed the substances in the analyzed containers were marijuana and weighed 450.33 grams combined.

Jones filed a motion to suppress the evidence based on an improper traffic stop or seizure and an improper search of the vehicle. The district court denied Jones' motion, finding the deputy had reasonable articulable suspicion for the traffic stop and probable cause to search the vehicle.

Just before his jury trial, Jones objected to the district court's ruling on the motion to suppress and asked the district court for a continuing objection during trial. During Jones' opening statement, his attorney specifically stated:  "[W]e don't contest the fact that Mr. Jones possessed marijuana."

3

The deputy testified that on November 14, 2021, around 11:30 p.m., she saw a small passenger car with a bright blue tag light. Upon confirming the tag light was blue, she turned on her camera and emergency lights to conduct a traffic stop. As the deputy approached the vehicle on the passenger side, the driver rolled the window down and the deputy saw a red one-hit pipe about two inches long in a cigarette holder in the cupholder. Based on her training and experience, the deputy knew the device was almost always used as a marijuana pipe. Jones established his identity by providing his driver's license to the deputy.

Jones was placed in the patrol car while the deputy talked to him. Jones explained he was coming back from Colorado and heading home to McPherson. Jones did not consent to the deputy's request to search the vehicle. Given her observation of the pipe, the deputy decided she would search the vehicle without Jones' permission. Jones then offered to retrieve the pipe from the vehicle and stop the need to search the vehicle. Upon searching the vehicle and retrieving the pipe, the deputy observed it had burnt vegetation in it which confirmed her belief the pipe was being used to smoke marijuana.

The search of the vehicle's interior revealed a can of chewing tobacco in the center console filled with marijuana and some tools to stuff the pipe. A bag in the back seat of the vehicle contained a small black container labeled marijuana with a THC warning label consistent with products coming from a Colorado marijuana dispensary. In the trunk of the vehicle, a quart-sized bag with eight more black containers with THC warning labels and a vacuum-sealed bag with more vegetation was found. During the search, no Kansas drug tax stamp was found. The deputy testified, based on her training and experience, the amount of marijuana found would more likely be for distribution rather than personal use, although she admitted she had never experienced someone carrying such a large quantity of marijuana in a single bag.

A KBI forensic chemist testified she received and analyzed the vegetative contents from this case. In testing the vegetation, she specifically looked at and analyzed plant hair structures and used a solvent extraction to identify the components of the sample. Using these methods, she confirmed the contents of the vacuum-sealed bag weighed 445.01 grams, was positive for the presence of marijuana, and contained THC. She also tested the contents of one of the small black containers, which weighed 5.32 grams, and was likewise positive for marijuana. The other containers found in Jones' car were not tested, given the results found for the first two items already tested.

Jones timely moved for a directed verdict at the end of the State's case on all three counts, primarily arguing the weight of the products alone was not enough to establish intent to distribute. The district court denied Jones' motion.

*Jones' admissions*

Jones testified he went to Colorado to purchase enough marijuana to last him for a year because he was using marijuana "[p]ractically every day." He testified he did not purchase it with the intent to sell. Jones admitted the pipe was his and he would use it daily to smoke the marijuana. Jones also admitted he paid for the marijuana with cash, no tax was paid on it, and he never possessed a Kansas drug tax stamp.

*Closing argument*

In his closing argument, Jones' attorney specifically asked the jury to find Jones guilty of simple possession of marijuana, the lesser included offense of possession of marijuana with intent to distribute, stating:

- "I readily admit the State proved there was more than 450 grams [of marijuana]."

- "[T]he State wants you to disregard everything that Mr. Jones said, even though he was honest about apparently possessing the pipe, was honest about possessing the marijuana."
- "Mr. Jones told you exactly what [the marijuana] was there for, that it was there to be smoked for personal use. We're asking that you find Mr. Jones guilty of possession of marijuana."
- "[The second line on the verdict form] is, we, the jury, find the defendant guilty of unlawful possession of marijuana. That's simple possession, personal use. That's what we believe Mr. Jones is guilty of. That's why we're here."

Jones then renewed his motion for directed verdict on all counts, and the district court again denied the motion.

Consistent with Jones' argument, the jury found him guilty of the lesser offense of unlawful possession of marijuana, as well as unlawful possession of marijuana without Kansas drug tax stamps affixed and unlawful possession of drug paraphernalia. The district court sentenced Jones to 8 months' imprisonment for the drug tax stamp violation, suspended to 12 months' probation; 6 months in jail for possession of marijuana, suspended to 12 months' probation; and 6 months in jail for possession of drug paraphernalia, suspended to 12 months' probation. The district court ordered all counts to run concurrent.

ANALYSIS

*Jones' vehicle was not unlawfully searched or seized.*

Jones contends law enforcement did not have probable cause to search his vehicle based on the presence of a one-hit pipe and the fruits of the search must be suppressed. Jones asks us to reverse the district court's decision denying his motion to suppress.

6

Jones filed a motion to suppress in the district court challenging both the traffic stop and the vehicle search. The district court denied the motion. Jones again asked the district court to suppress the evidence before his jury trial and asked for a continuing objection. The issue has properly been preserved for appeal. See K.S.A. 60-404; *State v. Martin*, 318 Kan. 538, 563, 544 P.3d 820 (2024) ("[W]hen a district court denies a pretrial motion to exclude evidence, we require the defendant to contemporaneously object to the admission of the challenged evidence at trial to preserve the issue for appellate review.").

Our standard of review of a district court's decision on a motion to suppress has two components. We review the district court's factual findings to determine whether they are supported by substantial competent evidence. "'"Substantial competent evidence is 'such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion.' [Citation omitted.]"'" *State v. Perry*, 318 Kan. 374, 378, 543 P.3d 1135 (2024). The ultimate legal conclusion, however, is reviewed using a de novo standard. *Martin*, 318 Kan. at 558. "If there are no disputed material facts, the issue [of whether to suppress evidence] is a question of law over which the appellate court has unlimited review. [Citations omitted.]'" *State v. Crudo*, 318 Kan. 32, 34, 541 P.3d 67 (2024). "In reviewing the factual findings, the appellate court does not reweigh the evidence or assess the credibility of witnesses." *State v. Scheuerman*, 314 Kan. 583, 593, 502 P.3d 502 (2022).

The Fourth Amendment to the United States Constitution provides, in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. Section 15 of the Kansas Constitution Bill of Rights provides protection coextensive with the Fourth Amendment. *State v. Daino*, 312 Kan. 390, 396, 475 P.3d 354 (2020). A warrantless search is per se unreasonable unless it falls under one of the recognized exceptions to the warrant requirement. One such exception is a search based on probable

7

cause with exigent circumstances. *State v. Doelz*, 309 Kan. 133, 140, 432 P.3d 669 (2019). The burden is on the State to establish the search and seizure were lawful under the Fourth Amendment. *State v. Hillard*, 315 Kan. 732, 747, 511 P.3d 883 (2022).

"[P]robable cause for a search . . . 'can be established if the totality of the circumstances indicates there is a fair probability that the place to be searched contains contraband or evidence of a crime.'" *State v. Regelman*, 309 Kan. 52, 61, 430 P.3d 946 (2018).

> "'"Exigent circumstances exist where the police officer reasonably believes there is a threat of imminent loss, destruction, removal, or concealment of evidence or contraband."' 'For Fourth Amendment purposes, the mobility of a vehicle fulfills the requirement of exigent circumstances, so that a warrantless vehicle search is permitted based solely on probable cause.' [Citations omitted.]" *State v. Howard*, 305 Kan. 984, 990, 389 P.3d 1280 (2017).

Further, "'[u]nder [the plain-view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant.'" *Doelz*, 309 Kan. at 140-41.

Jones acknowledges another panel of this court previously determined the observation of a pipe coupled with the officer's knowledge that the pipe was used to smoke illicit drugs was enough to establish probable cause. See *State v. Knight*, 55 Kan. App. 2d 642, 648-49, 419 P.3d 637 (2018). Nevertheless, he still suggests the deputy lacked probable cause to search his car for marijuana upon seeing the one-hit pipe.

Here, the deputy testified that, based on her training and experience, she recognized Jones' pipe, which was in plain view when the window was rolled down, to be a device commonly used for smoking marijuana as opposed to just any random pipe.

8

With her observation of the pipe, the deputy had probable cause to believe marijuana was in the vehicle even without the smell of marijuana emanating from the vehicle. The deputy also acknowledged the pipe was not illegal to possess on its own, though it is generally used for marijuana.

The State established the deputy's conduct was objectively reasonable based on probable cause given her plain-view observations of the pipe and the exigent circumstances exception to the warrant requirement. Under these facts, there was a fair probability Jones' car contained marijuana, and the mobility of Jones' vehicle fulfilled the exigent circumstances requirement. Jones also acknowledges in his brief the observation of a pipe coupled with the deputy's knowledge the pipe was used to smoke illicit drugs was enough to establish probable cause. See *Knight*, 55 Kan. App. 2d at 648-49.

Substantial competent evidence supports the district court's factual finding the deputy recognized the pipe as a device used for marijuana based on her training and experience. That is, a reasonable person would find such legal and relevant evidence sufficient to support the district court's findings. We do not reweigh the evidence or assess witness credibility. *Scheuerman*, 314 Kan. at 593. Therefore, we decline Jones' invitation to reverse the denial of his motion to suppress.

*Multiplicity*

Jones next asserts his convictions of a drug tax stamp violation and possession of marijuana are multiplicitous because his convictions arose out of the same conduct and constituted a single crime. Jones asks us to reverse his conviction of possession of marijuana.

Jones acknowledges he failed to raise the issue below but asks us to reach the merits of his claim under an exception to the preservation rule. Specifically, Jones asserts

9

his claim is a newly asserted theory involving only a question of law arising on proven or admitted facts and is determinative of the case, and reviewing his claim is necessary to serve the ends of justice or prevent the denial of fundamental rights. See *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). Our Supreme Court has considered multiplicity issues for the first time on appeal, and we can do the same. See *State v. Gonzalez*, 311 Kan. 281, 295, 460 P.3d 348 (2020); *State v. Hirsh*, 310 Kan. 321, 338, 446 P.3d 472 (2019). We exercise unlimited review over issues of multiplicity and issues of statutory interpretation. 310 Kan. at 338.

> "'Multiplicity is the charging of a single offense in several counts of a complaint or information. The reason multiplicity must be considered is that it creates the potential for multiple punishments for a single offense in violation of the Double Jeopardy Clause of the Fifth Amendment [to] the United States Constitution and section 10 of the Kansas Constitution Bill of Rights.'" *State v. Schoonover*, 281 Kan. 453, 475, 133 P.3d 48 (2006).

In determining whether a conviction is multiplicitous, we engage in a two-part inquiry: "(1) Do the convictions arise from the same conduct and, if so, (2) by statutory definition, are there two offenses or only one?" *State v. Thompson*, 287 Kan. 238, 244, 200 P.3d 22 (2009). The only issue here is whether the convictions arise from the same conduct. Even if we were to address the second inquiry in the multiplicity analysis, our Supreme Court has already concluded: "[P]ossession of marijuana is a lesser included offense of possession of marijuana with no tax stamp, . . . [and] the legislature did not intend to punish both crimes when they arise from the same conduct. [Citation omitted.]" *State v. Hensley*, 298 Kan. 422, 438, 313 P.3d 814 (2013).

To determine whether the conduct was unitary, we consider four nonexclusive factors:

"'(1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct.'" *Thompson*, 287 Kan. at 244.

Jones argues the convictions arose from the same conduct because all the marijuana lacking a drug tax stamp was found at the same time and location—during the traffic stop. Jones claims the State treated all the recovered marijuana the same and did not identify some marijuana for personal use and some for sale or distribution. The parties appear to solely focus on the fourth factor—whether there was a fresh impulse motivating the conduct.

The State argues there were clearly two sets of marijuana recovered from the vehicle—the small batch found in a chewing tobacco container in the center console of the vehicle and the larger quantity vacuum-sealed in the trunk of the vehicle. The State analogizes this case with *State v. Crudo*, 62 Kan. App. 2d 464, 517 P.3d 857 (2022), *aff'd* 318 Kan. 32, 541 P.3d 67 (2024).

In *Crudo*, police officers stopped a truck pulling a camper. A small quantity of marijuana was found in the truck, but the camper contained 19 vacuum-sealed bags of marijuana as well as another small stash of marijuana. Crudo was convicted of possession of marijuana and no drug tax stamp and challenged his convictions as multiplicitous before another panel of this court. The panel determined the marijuana found in the truck was for personal use while the marijuana contained in the vacuum-sealed bags in the camper was for distribution and constituted a fresh impulse; thus, the conduct did not arise out of unitary conduct. 62 Kan. App. 2d at 492. Our Supreme Court agreed. 318 Kan. at 44.

11

Jones' case differs from *Crudo*. While in both cases there were smaller amounts of marijuana near the driver of the vehicle and larger quantities in the back of the vehicle or camper, Jones carried substantially less marijuana. In *Crudo*, the panel explained:

"[T]he evidence underlying the drug tax stamp conviction had to be the 19 bags of marijuana found under the bathtub in the camper because the drug tax stamp charge stemmed from a weight of 'over 28 grams of marijuana.' The jury was also informed of this weight requirement in the jury instruction for the drug tax stamp charge. The only evidence presented at the first trial about the weight of any of the marijuana related to the 19 vacuum-sealed bags of marijuana. Moreover, the only testimony referencing drug tax stamps was [Lieutenant] Ricard's testimony that these 19 bags did not have any such stamps.

"The evidence underlying the possession of marijuana conviction, on the other hand, could have been the marijuana found underneath the stairs in the camper or the small piece of marijuana found in the pickup. [Lieutenant] Ricard and [Lieutenant] Stopper only testified that the 19 bags reflected possession with the intent to distribute." 62 Kan. App. 2d at 490.

The *Crudo* panel found the marijuana prompted separate impulses—the impulse to distribute the 19 vacuum-sealed bags and an impulse to personally use the smaller amounts of marijuana. 62 Kan. App. 2d at 492. Here, Jones had nine smaller containers of marijuana, one of which weighed 5.32 grams, and one vacuum-sealed bag with 445.01 grams of marijuana. Unlike in *Crudo*, where the 19 vacuum-sealed bags were distinguished from the smaller amounts of marijuana found, here, the State had to include both the vacuum-sealed bag of marijuana and the other containers of marijuana found in Jones' car to charge him with intent to distribute at least 450 grams of marijuana. The State clearly lumped all the marijuana together to charge Jones with possession of marijuana with intent to distribute. Now, after the jury declined to convict Jones of possession with intent to distribute, the State claims the marijuana found in the trunk of Jones' vehicle constituted a separate, fresh impulse—possession with intent to distribute—from the other packs of the marijuana found. Essentially, the State is asking

12

us to ignore the jury's factual determination—something we cannot do. See *Scheuerman*, 314 Kan. at 593.

In contrast to the facts here, in *Crudo*, the jury was hung on possession of marijuana with intent to distribute and found Crudo guilty of simple possession of marijuana. When the State retried Crudo for possession of marijuana with intent to distribute, the jury returned a guilty verdict. Here, however, the jury was not hung; rather, it specifically did not find Jones guilty beyond a reasonable doubt of possession of marijuana with intent to distribute. In fact, the jury was instructed:  "If you find the defendant possessed 450 grams or more of marijuana you must presume that the defendant possessed the marijuana with intent to distribute unless the defendant persuades you otherwise. You may consider this presumption along with all the other evidence in the case." "[J]urors generally are presumed to follow their instructions." *State v. Slusser*, 317 Kan. 174, 193, 527 P.3d 565 (2023).

Based on the evidence, the jury was apparently persuaded Jones did not possess marijuana with the intent to distribute. Rather, despite the presumption, the jury concluded all the marijuana found in Jones' vehicle was for personal use. Again, we do not reweigh the evidence or assess witness credibility. *Scheuerman*, 314 Kan. at 593. Thus, based on the facts here—specifically, the way the State charged Jones and the underlying evidence—we find Jones' convictions arose out of the same conduct as there was only one impulse to personally use marijuana. We, therefore, reverse Jones' conviction of possession of marijuana.

*Sufficiency of the evidence*

Jones next challenges the sufficiency of the evidence supporting his convictions of possession of marijuana and possession of marijuana with no drug tax stamp. Because we have already determined Jones' conviction of possession of marijuana is multiplicitous,

13

we limit our discussion to the sufficiency of the evidence for the drug tax stamp violation. Jones asserts his conviction of no drug tax stamp still required the State to prove the substance he possessed was marijuana, which the State failed to prove beyond a reasonable doubt.

Jones specifically argues the State failed to prove he possessed marijuana based on its legal definition. Jones suggests no evidence was presented to the jury proving the marijuana at issue fell within the legal definition of marijuana and not the excluded portions of the statutory definition. Jones states: "[I]t is impossible for a lay jury to distinguish 'industrial hemp' from 'marijuana'—for the simple reason that the main difference is the percent concentration of THC."

The State counters, arguing Jones' claim is not a sufficiency of the evidence claim but an unpreserved foundational argument. The State acknowledges conflicting authority on this point. See *State v. Baldwin*, No. 124,442, 2023 WL 5163292, at *3 (Kan. App. 2023) (unpublished opinion) (finding argument that marijuana was not in fact marijuana under legal definition was sufficiency of evidence claim); *State v. Holder*, No. 120,464, 2020 WL 6108359, at *9 (Kan. App. 2020) (unpublished opinion) (finding argument that marijuana was not in fact marijuana under legal definition was evidentiary challenge for lack of foundation), *aff'd* 314 Kan. 799, 502 P.3d 1039 (2022). Even addressing Jones' claim as a sufficiency of the evidence claim, his argument is unpersuasive.

The standard of review for a sufficiency challenge in a criminal case requires us to review the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. "There must be evidence supporting each element of a crime to meet the sufficiency of the evidence standard." *State v. Hilyard*, 316 Kan. 326, 330, 515 P.3d 267 (2022). We will not reweigh the evidence, resolve evidentiary conflicts, or make witness credibility determinations. 316 Kan. at 331. It is only in rare cases in which the "evidence [is] so

incredulous no reasonable fact-finder could find guilt beyond a reasonable doubt" that a guilty verdict will be reversed. *State v. Torres*, 308 Kan. 476, 488, 421 P.3d 733 (2018). To the extent we must interpret K.S.A. 2021 Supp. 21-5706(b)(3) or K.S.A. 79-5204(a), our review is unlimited. *State v. Deck*, 317 Kan. 101, 105, 525 P.3d 329 (2023).

The burden was on the State to establish beyond a reasonable doubt Jones was in possession of marijuana and failed to pay the Kansas drug tax stamp on such substance. See *State v. Stieben*, 292 Kan. 533, 537, 256 P.3d 796 (2011). As for the drug tax stamp violation, the State had to prove beyond a reasonable doubt Jones possessed more than 28 grams of marijuana without affixing official Kansas drug tax stamps or other labels showing the tax had been paid. See K.S.A. 79-5204(a); K.S.A. 79-5201(a); K.S.A. 79-5201(c); PIK Crim. 4th 57.230 (2022 Supp.).

At the time of the incident in November 2021, both the Kansas Criminal Code and the Kansas Uniform Controlled Substances Act defined marijuana as:

> "all parts of all varieties of the plant Cannabis whether growing or not, the seeds thereof, the resin extracted from any part of the plant and every compound, manufacture, salt, derivative, mixture or preparation of the plant, its seeds or resin. 'Marijuana' does not include: (1) The mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture or preparation of the mature stalks, except the resin extracted therefrom, fiber, oil or cake or the sterilized seed of the plant that is incapable of germination; (2) any substance listed in schedules II through V of the uniform controlled substance act; (3) cannabidiol . . . ; or (4) industrial hemp as defined in K.S.A. 2021 Supp. 2-3901, and amendments thereto, when cultivated, produced, possessed or used for activities authorized by the commercial industrial hemp act." K.S.A. 2021 Supp. 21-5701(j); K.S.A. 2021 Supp. 65-4101(aa).

Jones acknowledges another panel of this court recently addressed a sufficiency of the evidence argument in which the defendant contended the evidence did not support his

conviction of possession of marijuana for the same reasons Jones asserts, and the panel found the argument unpersuasive. See *Baldwin*, 2023 WL 5163292, at *3-6. Jones asks us to disagree with the *Baldwin* panel. We decline his request. See *State v. Fleming*, 308 Kan. 689, 706, 423 P.3d 506 (2018) ("[O]ne panel of the Court of Appeals may disagree with a previous panel of the same court.").

The *Baldwin* panel explained:

"[W]e note that while THC is one indicator that a substance is marijuana, it is not the only indicator. Circumstantial, as well as direct, evidence can assist a jury in determining whether the substance at issue is marijuana. In fact, a conviction can be based entirely on circumstantial evidence so long as the evidence supporting the verdict permits the fact-finder to draw reasonable inferences regarding the facts at issue. Circumstantial evidence need not exclude every other reasonable conclusion to be sufficient to support a conviction." 2023 WL 5163292, at *4.

Here, the deputy testified—based on her law enforcement training and experience, which included specific training on finding drugs in vehicles during a traffic stop—she recognized Jones' one-hit pipe as a type of pipe almost always used for marijuana. The State introduced the pipe into evidence during trial, and the jury was shown how the pipe unscrews and where the burnt marijuana residue was. Upon searching the vehicle, the deputy found multiple containers labeled as marijuana, with THC warning labels generally found on containers consistent with being from Colorado. No Kansas drug tax stamp was found on any of the vegetative substances. And the KBI forensic chemist who analyzed the substance testified the bags tested positive for the presence of marijuana, and the marijuana also contained THC.

Jones testified at trial and did not dispute the substances found in the car was marijuana. In fact, Jones admitted he planned to purchase marijuana while in Colorado, where he could legally make such purchase at a dispensary, and Jones told the deputy he

16

was coming home from Colorado. Jones admitted he knew possession of marijuana was illegal in Kansas and that he smokes marijuana practically every day using either a pipe or by rolling a joint. Jones also admitted the pipe found in the car was his and was the type of pipe he would typically use to smoke marijuana three or four times per day.

Based on the trial testimony and viewing the evidence in the light most favorable to the State, a rational fact-finder could have found Jones guilty beyond a reasonable doubt. A jury could quite easily determine based on the evidence produced that Jones went to Colorado to purchase marijuana to sustain his daily smoking habit. Jones also admitted the green leafy substance was used for smoking. The jury could also easily conclude Jones would not have gone to Colorado to buy marijuana (or a similar substance) containing an amount of THC that was lawful in Kansas. Further, the jury could reasonably infer Jones was smoking marijuana with enough THC to produce a psychoactive effect and was not smoking industrial hemp as he suggested.

Jones argues the *Baldwin* panel was incorrect in essentially finding the statutory exceptions noted in the definition of marijuana were affirmative defenses, shifting the burden of proof to the defendant. See 2023 WL 5163292, at *6-7. Jones contends the Legislature placed the burden on the State to disprove the application of any exception by including the exceptions in the legal definition of marijuana. Jones asserts the Legislature knows how to create affirmative defenses and the exceptions provided in the definition of marijuana are not listed as affirmative defenses to the crime of possession of marijuana.

> "'The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. In ascertaining this intent, we begin with the plain language of the statute, giving common words their ordinary meaning. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. But if a statute's language

is ambiguous, we will consult our canons of construction to resolve the ambiguity. [Citations omitted.]'" *State v. Pepper*, 317 Kan. 770, 777, 539 P.3d 203 (2023).

The plain language of the first sentence of K.S.A. 2021 Supp. 21-5701(j) and K.S.A. 2021 Supp. 65-4101(aa) explicitly states what constitutes marijuana. The rest of the statutes provide exceptions for substances that are not considered marijuana. By including a list of what is not considered marijuana, the Legislature simply created a narrower definition of marijuana. The exceptions are not affirmative defenses because they define what is outside the scope of the law, not circumstances in which otherwise illegal conduct is lawful. But we need not engage in a statutory construction analysis because the circumstantial evidence reflects the substance Jones possessed fell into the narrower statutory definition of marijuana. See *Pepper*, 317 Kan. at 779 ("[E]ven the gravest crime can be proved with circumstantial evidence and the logical inferences properly drawn from that evidence.").

The *Baldwin* panel relied on *State v. Brazzle*, 311 Kan. 754, 767, 466 P.3d 1195 (2020), for the proposition the State did not have the duty to present evidence rebutting every statutory exception. *Baldwin*, 2023 WL 5163292, at *5-6. In *Brazzle*, the defendant challenged the sufficiency of the evidence to support his conviction of possession of oxycodone. Brazzle argued the State failed to present evidence showing he was not legally in possession of the oxycodone because he did not have a prescription. Our Supreme Court declined to "delve into the complex statutory construction issue about whether the existence of the prescription [was] an affirmative defense" for possession of oxycodone. 311 Kan. at 767. Instead, our Supreme Court noted sufficient circumstantial evidence suggested Brazzle was not in lawful possession of the oxycodone and the jury could infer as much based on the testimony elicited at trial. 311 Kan. at 767.

We accept the *Brazzle* analysis. Considering the evidence presented at trial— including that Jones admitted he annually traveled to Colorado to purchase marijuana—a

18

rational fact-finder could reasonably determine Jones illegally possessed more than 28 grams of marijuana and failed to obtain a drug tax stamp on the marijuana.

Jones next claims the *Baldwin* panel erred by relying on *State v. Luginbill*, 223 Kan. 15, 574 P.2d 140 (1977)—a case Jones suggests was wrongly decided based on current legal standards. Jones does not seem to fully understand the *Baldwin* panel's analysis of *Luginbill*.

The *Baldwin* panel acknowledged the State had relied on *Luginbill* for the proposition that "the presence of THC in a substance was enough to identify it as marijuana, under the definition as it existed at that time." *Baldwin*, 2023 WL 5163292, at *4. But the panel concluded:

> "[T]he court in *Luginbill* was not interpreting the statutory definition of marijuana at issue here, but the definition as it existed in 1972. Since *Luginbill* was handed down, the Legislature has amended the definition of marijuana several times. Given the changes in the definition of marijuana, an indiscriminate reliance on *Luginbill* would be suspect. Even so, *Luginbill* establishes the presence of THC is *one factor* that is relevant in establishing whether a substance is marijuana." (Emphasis added.) *Baldwin*, 2023 WL 5163292, at *4.

The *Baldwin* panel pointedly noted the definition of marijuana has evolved since *Luginbill* was decided in 1977. But, even today, the presence of THC is a factor to be considered. This is true considering industrial hemp is not considered marijuana and is defined as "all parts and varieties of the plant cannabis sativa L., whether growing or not, that contain a delta-9 [THC] concentration of not more than 0.3% on a dry weight basis." K.S.A. 2021 Supp. 2-3901(b)(7).

Both direct and circumstantial evidence supports the elements of possession of marijuana with no drug tax stamp. Viewing the evidence in the light most favorable to the State, a rational fact-finder could have found Jones guilty beyond a reasonable doubt.

*Motion for directed verdict*

Jones argues the district court erred in denying his motion for directed verdict as to his original charge of possession of marijuana with intent to distribute and of no drug tax stamp. Given the evidence at trial, there was a clear fact question for the jury to determine: Did Jones possess marijuana for personal use or for distribution? Because the jury found him not guilty of possession of marijuana with the intent to distribute, that portion of his argument is moot. Thus, we will direct our attention to determining whether the district court erred in denying his motion for directed verdict on his conviction of possession of marijuana with no drug tax stamp.

"'A challenge to a denial of a motion for acquittal is, at the core, a challenge to the sufficiency of the evidence.'" *State v. Frantz*, 316 Kan. 708, 736, 521 P.3d 1113 (2022). When defendants challenge the sufficiency of the evidence in a criminal case, our standard of review is whether, after reviewing all trial evidence in a light most favorable to the prosecution, we are convinced that a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. We do not reweigh evidence or determine witness credibility. 316 Kan. at 736. To the extent statutory interpretation is involved, we have unlimited review. *Deck*, 317 Kan. at 105.

Our Supreme Court previously found:

"[W]hen a defendant unsuccessfully moves for judgment of acquittal at the close of the State's evidence and then proceeds to present evidence, the defendant waives any error in denial of the motion. We later modified this rule to provide that a defendant does not

20

waive error if he or she presents only rebuttal evidence confined to the substance and credibility of the witnesses for the State or a codefendant and does not try to refute any elements of proof adduced in the State's case." *Frantz*, 316 Kan. at 732-33.

Jones asserts certain people are exempt from the drug tax stamp crimes and, based on statutory interpretation, claims the exemptions are elements of the tax stamp violation. As such, Jones suggests the State must disprove the exemptions beyond a reasonable doubt. Jones claims the State was required to disprove he was a registered pharmacist lawfully in possession of marijuana. Jones presented no evidence refuting the elements of proof in the State's case of a drug tax stamp violation and did not waive any error in the denial of the motion for directed verdict on this claim. Jones again suggests the exemptions are elements of the offense that the State must disprove and are not affirmative defenses.

The State had the burden to prove Jones was a dealer who possessed more than 28 grams of marijuana without affixing official Kansas drug tax stamps or other labels showing the tax had been paid. See K.S.A. 79-5204(a); K.S.A. 79-5201(a); PIK Crim. 4th 57.230. Specifically with respect to marijuana, a "'dealer'" is statutorily defined as "any person who, *in violation of Kansas law*, manufactures, produces, ships, transports or imports into Kansas or in any manner acquires or possesses more than 28 grams of marijuana." (Emphasis added.) K.S.A. 79-5201(c). Because a pharmacist or physician is not required by law to have a tax stamp, they would not possess marijuana without a drug tax stamp in violation of Kansas law. See K.S.A. 79-5210 ("Nothing in this act requires persons registered under article 16 of chapter 65 of the Kansas Statutes Annotated or otherwise lawfully in possession of marijuana or a controlled substance to pay the tax required under this act."). Construed as a whole, K.S.A. 79-5204(a) requires the State to prove the person is a "'dealer'" as defined by K.S.A. 79-5201(c), which necessarily means the person is not someone exempt under K.S.A. 79-5210. Even so, strong direct and circumstantial evidence reflects Jones had more than 28 grams of marijuana and was not

exempt, given his admission to the circumstances surrounding the purchase and his intended use of the marijuana.

Jones' challenge to the denial of his motion for directed verdict is essentially a sufficiency of the evidence challenge. And reviewing the evidence in the light most favorable to the State, a rational fact-finder could have found Jones guilty beyond a reasonable doubt of a Kansas drug tax stamp violation.

CONCLUSION

We find the deputy had probable cause to stop Jones' car and observed the pipe in plain view in his car. Coupled with the exigent circumstances a car provides, Jones' motion to suppress was correctly denied by the district court. Jones' conviction for possession of marijuana was multiplicitous to his conviction for possession of marijuana with no drug tax stamp; thus, his conviction for simple possession is reversed and his sentence for that conviction is vacated. We also find the evidence he possessed marijuana with no drug tax stamp was sufficient for the jury to find him guilty beyond a reasonable doubt. We also find his motion for directed verdict is not persuasive given the fact questions for the jury to decide, and the district court did not err in denying the motion.

Affirmed in part, reversed in part, and sentence vacated in part.