IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 123,559

STATE OF KANSAS,
*Appellee,*

v.

FRANK RAYMOND CRUDO,
*Appellant.*

SYLLABUS BY THE COURT

1.

Probable cause to search a stopped vehicle does not have to be "localized" and thus limited to one particular area or part of the travelling unit. That is, under the automobile exception, once probable cause to search is established, it extends to the entire travelling unit.

2.

The determination of whether testimony is properly admitted as lay opinion is based upon the nature of the testimony, not whether the witness could be qualified as an expert. A careful case-by-case review must be made of evidentiary questions which come before a district court.

3.

Just because one offense can technically be a lesser included offense of another does not always require such a finding if the charges are based on separate acts.

1

Review of the judgment of the Court of Appeals in 62 Kan. App. 2d 464, 517 P.3d 857 (2022). Appeal from Geary District Court; BENJAMIN J. SEXTON, judge. Oral argument held April 11, 2023. Opinion filed January 12, 2024. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Tony Cruz*, assistant county attorney, argued the cause, and *Derek Schmidt*, former attorney general, and *Kris W. Kobach*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

STEGALL, J.:  Frank Raymond Crudo was driving his truck and attached fifth-wheel camper east along Interstate 70 in January 2014 when he was pulled over by Lieutenant Christopher Ricard. Lt. Ricard had observed that Crudo's license tag light on the camper was not working. As Lt. Ricard approached the truck, he smelled a strong odor of raw marijuana and called for backup. The officers then told Crudo they planned to search the truck. Crudo became combative and was ultimately handcuffed and placed inside a patrol car.

In the cab of the truck, officers found a small piece of marijuana between the seats. They then searched the camper and found more marijuana. Underneath the bathtub, officers found 19 vacuum-sealed bags, each containing approximately one pound of marijuana, and labeled by strain. Officers also found a small amount of marijuana under the stairs, along with rolling papers and a grinder.

The State charged Crudo with:  (1) possession of marijuana with intent to distribute in violation of K.S.A. 2013 Supp. 21-5705(a)(4) and (a)(7), a drug severity

2

level 2, nonperson felony; (2) no drug tax stamp in violation of K.S.A. 79-5204(a) and 79-5208, a severity level 10, nonperson felony; (3) possession of marijuana in violation of K.S.A. 2013 Supp. 21-5706(b)(3) and/or (b)(7), a class A nonperson misdemeanor; and (4) conspiracy to possess marijuana with the intent to distribute in violation of K.S.A. 2013 Supp. 21-5302(a), a severity level 2, nonperson felony.

Prior to trial, Crudo filed a motion to suppress the marijuana found in the camper. He argued that the officers lacked constitutional authority to execute a warrantless search of the camper. Specifically, he suggested that whatever legal justification existed for the warrantless search of the truck did not and could not—as a matter of law—be extended to include the fifth-wheel trailer. Ultimately, Crudo's motion was denied.

During the first jury trial Crudo moved for a directed verdict on all counts. The district court denied the motion with respect to all but the conspiracy to distribute charge, dismissing that charge by holding that the State had not shown the required meeting of the minds or mutual understanding. The jury then convicted Crudo of possession of marijuana and possession of marijuana with no drug tax stamp but was hung on the distribution charge. The district court declared a mistrial on that charge alone and Crudo was retried. Before his second trial, Crudo raised a double jeopardy argument claiming that because his conviction for simple possession of marijuana was a lesser included offense of the distribution charge, he could not be retried on the greater offense. The district court disagreed, and the charge went to trial.

At the second jury trial, Crudo was convicted of possession with intent to distribute. Crudo was then sentenced on all convictions to 36 months' probation with an underlying 108-month prison term. He appealed and the Court of Appeals affirmed his convictions. *State v. Crudo*, 62 Kan. App. 2d 464, 517 P.3d 857 (2022). Now Crudo seeks review of that decision. Specifically, he makes five arguments to us: (1) that the legal rationale permitting a warrantless search of his truck did not "extend" to the fifth-

3

wheel trailer; (2) that testimony at his second trial from Lt. Ricard was expert testimony permitted by the trial court in violation of K.S.A. 2022 Supp. 22-3212(b)(2); (3) that the erroneous use of a permissive inference instruction amounted to reversible error; (4) that his second trial violated double jeopardy; and (5) cumulative error. We address each in turn and, finding no error, we affirm.

*Search of the Fifth-Wheel Trailer Was Proper*

Our standard of review governing this issue is well established:

"Our review of an evidence suppression issue is bifurcated. Without reweighing the evidence, the appellate court first examines the district court's findings to determine whether they are supported by substantial competent evidence. The district court's legal conclusions are then reviewed de novo. *If there are no disputed material facts, the issue* [*of whether to suppress evidence*] *is a question of law over which the appellate court has unlimited review.* [Citations omitted.]" (Emphasis added.) *State v. Karson*, 297 Kan. 634, 639, 304 P.3d 317 (2013).

As in this case, when the material facts are not in dispute, the remaining question is one of law. Accordingly, we exercise unlimited review. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018). The undisputed facts relevant to the specific legal challenge Crudo mounts are as follows. The trailer was engaged as a tow unit onto Crudo's truck, and it was in fact being towed down the highway. The trailer was of a sort—a fifth-wheel—that while in operation, the occupants of the truck would have no access to the trailer. The stop was legitimate and is not questioned here. During the stop, officers noticed the smell of raw marijuana coming from the cab of the truck. Probable cause in support of this search is conceded by Crudo. Officers did not observe any smell of marijuana coming from the fifth-wheel trailer, and the State has conceded that the officers did not have "localized" probable cause specific to the trailer. Nonetheless, the officers did search the trailer.

4

So, the question now comes to us—given these specific undisputed facts, was the search of the trailer legally justified as a warrantless search under the Fourth Amendment to the United States Constitution? We conclude it was. The Fourth Amendment prohibits unreasonable searches and seizures, and warrantless searches are per se unreasonable unless they fall within one of the exceptions to the warrant requirement. *State v. Heim*, 312 Kan. 420, 422-23, 475 P.3d 1248 (2020). One such exception involves the existence of probable cause plus exigent circumstances. *State v. Howard*, 305 Kan. 984, 989, 389 P.3d 1280 (2017). A sub-species of this exception allows the State to satisfy proof of exigency simply by showing that the object of the search was a vehicle travelling on the road. 305 Kan. at 990; see also *State v. Doelz*, 309 Kan. 133, 143, 432 P.3d 669 (2019). Thus, the so-called "automobile exception" permits the State to conduct a warrantless search of a vehicle travelling on the road anytime probable cause is present. *State v. Conn*, 278 Kan. 387, 395, 99 P.3d 1108 (2004) ("[T]he 'automobile exception' . . . allows the warrantless search of a vehicle when probable cause has been established to justify a search.").

As described above, Crudo does not contest the search of the truck under the automobile exception. He argues instead that the automobile exception does not extend to include his trailer. To resolve this claim, we must examine two distinct and specific questions. First, is the fact that the trailer was being towed down the highway sufficient to establish exigency? And second, does the probable cause that gives rise to a legitimate search under the automobile exception have to be "localized"—and thus limited—to a specific area of search, or does the existence of probable cause extend as a matter of law to the entire travelling unit?

The answer to the first question is straightforward. The trailer was being towed down the highway and was sufficiently mobile to satisfy the exigency requirement. The fact the trailer had the capacity to be parked and used as a residence—as Crudo argues—

5

is irrelevant. At the time of the stop, it was indisputably not being used that way. The United States Supreme Court has extended the automobile exception to motor homes in *California v. Carney*, 471 U.S. 386, 393, 105 S. Ct. 2066, 85 L. Ed. 2d 406 (1985). The Court refused to distinguish vehicles based on their mere capability of functioning as a home, noting:

> "In our increasingly mobile society, many vehicles used for transportation can be and are being used not only for transportation but for shelter, *i.e.*, as a 'home' or 'residence.' . . .
>
> "[The automobile exception] has never turned on the other uses to which a vehicle might be put. The exception has historically turned on the ready mobility of the vehicle, and on the presence of the vehicle in a setting that objectively indicates that the vehicle is being used for transportation." 471 U.S. at 393-94.

Now we answer the second question. We conclude that probable cause to search a stopped vehicle does not have to be "localized" and thus limited to one particular area or part of the travelling unit. That is, under the automobile exception, once probable cause to search is established, it extends "bumper-to-bumper" to the entire travelling unit. See *United States v. Ross*, 456 U.S. 798, 825, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982) (The scope of a search under the automobile exception is identical to what a magistrate issuing a warrant could authorize—the proper scope therefore is not defined by the nature of the container but by the places in which probable cause exists to believe that the object of a search may be found.). Today's case is the first time we have considered this question in Kansas. Our sister courts, however, have routinely and consistently found that for probable cause purposes, a trailer hitched to a vehicle is considered together with the vehicle as one unit. See *Aviles v. Burgos*, 783 F.2d 270, 276 [1st Cir. 1986]); *United States v. Ortega-Ramos*, No. 94-3803, 1995 WL 314889, at *3 (6th Cir. 1995) (unpublished opinion); *United States v. Torres*, No. 3-:05-CR-051, 2005 WL 3546677, at *7-8 (S.D. Ohio 2005) (unpublished opinion) (citing *United States v. Ervin*, 907 F.2d 1534, 1537-38 [5th Cir. 1990]; see also *State v. Overbey*, 790 N.W.2d 35, 42 (S.D. 2010)

6

("The fifth-wheel camper was being towed by the pickup in the same fashion in which a semi-tractor tows a trailer. The camper was a part of the pickup and subject to search as long as the motor vehicle exception was satisfied as to any part of the pickup or camper."); *United States v. Millar*, 543 F.2d 1280, 1283 (10th Cir. 1976) ("The automobile and the trailer constituted a unit."); *State v. Finlay*, 257 Or. App. 581, 593, 307 P.3d 518 (2013) ("'quality of mobility is as true for the trailer attached to defendant's pickup as for the pickup itself'"); *State v. Specht*, No. 106,272, 2012 WL 1970108, at *7 (Kan. App. 2012) (unpublished opinion) ("[O]nce a police officer lawfully discovers contraband in the passenger compartment of a vehicle, probable cause exists to search the remainder of the vehicle, including a trunk or camper shell, for additional evidence of contraband.").

The logic and weight of these authorities convinces us to adopt the "one unit" rule. Thus, when executing a warrantless search under the automobile exception to the warrant requirement, the existence of probable cause with respect to any part of the vehicle is sufficient to establish probable cause to search the entire travelling unit. Therefore, the search of Crudo's trailer was supported by both exigency and probable cause and was not done in violation of Crudo's Fourth Amendment rights.

*The District Court Did Not Abuse Its Discretion by Permitting Lt. Ricard to Testify as a Lay Witness*

We know that the State did not comply with K.S.A. 2022 Supp. 22-3212(b)(2) (disclosure of expert opinions) with respect to Lt. Ricard's testimony because that testimony was admitted as a lay opinion. "Whether a witness—expert or layperson—is qualified to testify as to an opinion is to be determined by the trial court in the exercise of its discretion." *State v. Hubbard*, 309 Kan. 22, 43, 430 P.3d 956 (2018). Under this standard, "'"[a] trial court abuses its discretion when the act complained of '(1) is arbitrary, fanciful or unreasonable; (2) is based on an error of law; or (3) is based on an

7

error of fact."'"' 309 Kan. at 43 (quoting *State v. Sasser*, 305 Kan. 1231, 1243, 391 P.3d 698 [2017]). Crudo argues on appeal that the district court acted unreasonably and outside its discretion when it determined that Lt. Ricard was not relying on knowledge that was scientific, technical, or specialized during his testimony at Crudo's second trial (and therefore did not have to be qualified as an expert witness). See K.S.A. 2022 Supp. 60-456(a).

Crudo contends that three specific aspects of Lt. Ricard's testimony were improper as lay opinion and should have required Lt. Ricard and the State to satisfy the more rigorous requirements of expert testimony—both procedural and substantive. First, the testimony about the packaging and quantity of marijuana found in the camper and inferences about distribution. Second, testimony about the wholesale price of marijuana. And finally, testimony describing the behavioral patterns of marijuana traffickers—specifically, that the product is purchased in the western states and travels east on "short trips" in order to decrease the likelihood of encounters with law enforcement.

Before we examine the substance of Crudo's argument, we note that the Court of Appeals invoked a preservation bar to consideration of at least part of this aspect of the case. As a procedural bar to appellate review, K.S.A. 60-404 requires a party to make a contemporaneous objection to issues involving the erroneous admission or exclusion of evidence. *State v. Hillard*, 313 Kan. 830, 839, 491 P.3d 1223 (2021). A pretrial objection to the admission or exclusion of evidence must be preserved by contemporaneously objecting at trial, which can be accomplished through a standing objection. See *State v. Richard*, 300 Kan. 715, 721, 333 P.3d 179 (2014). Contrary to the Court of Appeals, we find Crudo substantially satisfied his burden under the contemporaneous objection rule. Thus, we will consider the merits of his claim.

The statute governing opinion testimony, K.S.A. 2022 Supp. 60-456(a), provides in relevant part:

"If the witness is not testifying as an expert, the testimony in the form of opinions or inferences is limited to such opinions or inferences as the judge finds: (1) Are rationally based on the perception of the witness; (2) are helpful to a clearer understanding of the testimony of the witness; and (3) are not based on scientific, technical or other specialized knowledge within the scope of subsection (b)."

K.S.A. 2022 Supp. 22-3212(b)(2) requires the prosecuting attorney to provide a summary of anything an expert witness intends to testify to on direct examination prior to trial. Subsection (i) of that statute authorizes the district court to exclude any expert witness testimony not properly disclosed. It is undisputed that the State did not disclose Lt. Ricard's testimony in the second trial pursuant to K.S.A. 2022 Supp. 22-3212(b)(2). His testimony was permitted as lay opinion evidence. Thus, if the district court abused its discretion in its determination that Lt. Ricard's testimony was not expert opinion evidence, the testimony ought to have been disallowed.

There is no bright line rule or clear precedent on this issue in Kansas—or elsewhere. A review of caselaw from our state, other states, and federal precedent creates a rule that is murky at best. "'The line between expert testimony . . . and lay opinion testimony . . . is not easy to draw.'" *United States v. Ayala-Pizarro*, 407 F.3d 25, 28 (1st Cir. 2005). We recently recognized "the difficulty drawing sharp boundaries between lay and expert opinion testimony." *Hubbard*, 309 Kan. at 45; see also *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002) ("A distinct line cannot be drawn between lay opinion and expert testimony because all perceptions are evaluated based on experiences.").

The subject is further muddled when the individual testifying is a law enforcement officer because they regularly offer evidence based on their training and experience without being qualified as expert witnesses. Nonetheless, we start any analysis of police

9

testimony with basic understanding that "[t]he rule of admissibility of lay opinion testimony is no different when . . . the lay opinion is offered by a police officer." *Warren v. State*, 164 Md. App. 153, 168, 882 A.2d 934 (2005).

"The determination of whether testimony is properly admitted as lay opinion is based upon the nature of the testimony, not whether the witness could be qualified as an expert." *United States v. Moran*, 778 F.3d 942, 967 (11th Cir. 2015). "Experience-derived police testimony concerning criminals' typical *modi operandi* during a drug transaction does not automatically constitute expert testimony." *United States v. Page*, 521 F.3d 101, 105, *as modified by* 542 F.3d 257 (1st Cir. 2008). Stated another way, the bare use of the terms "training" and "experience" does not automatically make someone an expert. See *In re Ondrel M.*, 173 Md. App. 223, 245, 918 A.2d 543 (2007). At the most basic level, "'opinions are formed by evaluating facts based on life experiences including education, background, training, occupation, etc.'" 173 Md. App. at 244.

Given all of this, we must return to the touchstone statutory language of K.S.A. 2022 Supp. 60-456—lay testimony cannot be "based on scientific, technical or other specialized knowledge." And here we are not tasked with deciding—as a matter of law— whether Lt. Ricard's testimony was *in fact* expert or lay testimony. Ultimately, the district court's decision in this matter was an evidentiary one. And we emphasize that we are reviewing it as such. We need only decide whether the trial judge abused its discretion. And based on the factors discussed below, we hold it did not.

As a preliminary matter, we observe that whether this specific testimony is even "opinion" testimony at all is open to doubt. Testimony about patterns of distribution, prices, and even inferences concerning distribution are all arguably observable facts directly within the observation of the testifying witness. The parties, however, seem to concede that the testimony at issue must be analyzed as "opinion" testimony, and that is how the matter comes before us. And we will review it as such.

The district court concluded that testimony about nine uniform, individually wrapped, labelled by strain, and hidden one-pound packages of marijuana and inferences to be drawn from these facts about distribution was not based on "scientific, technical or other specialized knowledge." We cannot find any abuse of discretion in this ruling. Indeed, the facts and inferences seem clearly to be in the purview of an ordinary person's common understanding.

Second, the district court concluded that testimony about the wholesale price of marijuana was not based on "scientific, technical or other specialized knowledge." Again, we see no abuse of discretion in this conclusion. General knowledge about marijuana is growing rapidly as it becomes more accessible across most states. Information about price is discoverable and readily available. Further, comprehending and interpreting that information does not require special training or complex analysis. This testimony just recites the price of an item. The district court did not abuse its discretion.

Finally, the district court allowed testimony about the logistics and patterns of the drug trade as lay opinion evidence. We acknowledge that this testimony seems intuitively closer to something based on "scientific, technical or other specialized knowledge." That said, the fact that marijuana is commonly grown in the western parts of the country; that as a result product typically moves from west to east along the nation's roadways; and that perhaps criminal traffickers would devise strategies to avoid encounters with law enforcement do not strike us as especially technical or specialized. This testimony certainly is not so obviously outside the scope of lay opinion evidence that the district court abused its discretion in allowing it.

When these claims arise on appeal, an appellate court is bound by an abuse of discretion standard of review. We emphasize that our holding today cannot be read to endorse every form of law enforcement testimony as lay opinion testimony. A careful

case-by-case review must be made of any evidentiary question that comes before a district court—and this is perhaps especially true in this area of the law. After such a review here, we hold the district court did not abuse its discretion by admitting Lt. Ricard's testimony as lay opinion testimony.

*The Permissive Inference Instruction Was Not Reversible Error*

The trial court instructed the jury—using PIK Crim. 4th 57.022—that it could "infer that the defendant had the intent to distribute marijuana, if the defendant possessed more than 450 grams of marijuana." Crudo asserts this instruction violated his constitutional right to a jury trial and his due process rights, because the permissive inference relieved the jury of its duty to find each necessary fact beyond a reasonable doubt. He argues that PIK Crim. 4th 57.022 creates a mandatory presumption which reduced the State's burden of proof to show an intent to distribute. We disagree.

We have recently resolved Crudo's precise claims. See *State v. Holder*, 314 Kan. 799, 801-02, 502 P.3d 1039 (2022); *State v. Strong*, 317 Kan. 197, 202, 527 P.3d 548 (2023); *State v. Slusser*, 317 Kan. 174, 182, 527 P.3d 565 (2023); *State v. Martinez*, 317 Kan. 151, 162-63, 527 P.3d 531 (2023); *State v. Bentley*, 317 Kan. 222, 246-47, 526 P.3d 1060 (2023). In these decisions, this court has held that PIK Crim. 4th 57.022 is a permissive inference instruction that does not accurately reflect applicable law. We have held that because K.S.A. 2022 Supp. 21-5705(e) actually creates a rebuttable presumption rather than a permissive inference, it is error to give the PIK Crim. 4th 57.022 instruction.

Therefore, we can easily conclude that the permissive instruction in this case was likewise error. And because Crudo has properly preserved his objection to the use of PIK Crim. 4th 57.022, we apply the constitutional harmless error standard. See *State v. Kleypas*, 305 Kan. 224, 257, 382 P.3d 373 (2016) (The constitutional harmless error

12

standard is defined in *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 [1967], under which standard, appellate courts "must be convinced beyond a reasonable doubt that the error complained of did not affect the outcome of the trial in light of the entire record—that is, that there is no reasonable possibility the error affected the jury's verdict of guilt.").

Again, our recent decisions guide us to the conclusion that the use of the permissive inference instruction was harmless in this case. Indeed, it was actually favorable to Crudo when compared to the rebuttable presumption of K.S.A. 2022 Supp. 21-5705(e). Functionally, the given instruction raised the State's burden of proof beyond what is statutorily required, and the jury still chose to convict Crudo. Because of this, there can be no reasonable probability the jury would have come to a different verdict under a lesser standard.

And finally, as in *Holder*, Crudo cannot mount a constitutional challenge to K.S.A. 2022 Supp. 21-5705(e) because his due process rights were never impacted by the statute. The erroneous permissive inference instruction relieved any potential due process problem with the statute. Indeed, we acknowledge this is the whole point behind the PIK Committee's decision to craft a permissive inference instruction in the first instance. Because a rebuttable presumption was never actually applied to Crudo at trial, he suffered no injury and lacks standing to challenge the statute. See *Holder*, 314 Kan. at 807-08.

*Crudo's Conviction for Possession with the Intent to Distribute Did Not Violate Double Jeopardy*

Next, Crudo argues that double jeopardy principles apply such that his conviction for simple possession at his first trial bars a second prosecution for possession with the intent to distribute. His logic is that at the first trial, the charge of simple possession was a lesser included offense of possession with intent to distribute. And that the jury's decision

13

to convict him of the lesser included crime functioned as an acquittal of the greater crime of distribution. And that following such a circumstance, the State cannot retry someone for a greater crime of which they have been functionally acquitted.

All of this would be true if the simple possession charge was in fact a lesser included charge of the distribution charge. But the fact that these two charges can, in fact, be charged as greater and lesser crimes does not mean that in this case, they were. To answer that question, we must engage in a multiplicity analysis. Questions involving multiplicity are questions of law subject to unlimited appellate review. *State v. Eckert*, 317 Kan. 21, 25, 522 P.3d 796 (2023); *State v. Schoonover*, 281 Kan. 453, 462, 133 P.3d 48 (2006). Similarly, whether a case presents a "multiple acts" issue is a question of law over which this court has unlimited review. 281 Kan. at 506.

"[M]ultiplicity is the charging of a single offense in several counts of a complaint or information." *State v. Thompson*, 287 Kan. 238, 244, 200 P.3d 22 (2009); *Schoonover*, 281 Kan. at 475. "The principal danger of multiplicity is that it creates the potential for multiple punishments for a single offense, which is prohibited by the Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights." *Thompson*, 287 Kan. at 244.

Double jeopardy can arise in three ways: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after a conviction; and multiple punishments for the same offense. *Schoonover*, 281 Kan. at 463. In determining whether a situation presents a double jeopardy issue, the overarching inquiry is whether the convictions are for the same offense. 281 Kan. at 496. To answer this, we must ask whether the convictions arise from the same, or unitary, conduct. 281 Kan. at 496.

"[S]ome factors to be considered in determining if conduct is unitary, in other words if it is the 'same conduct,' include: (1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct." 281 Kan. at 497.

Thus, as mentioned, just because simple possession *can be* a lesser included offense does not always require such a finding if charges for both possession and distribution are based on separate acts. The critical legal question in this case appears to be whether there was a "fresh impulse" motivating some of the conduct. 281 Kan. at 497. The Court of Appeals held there was a distinctly different motive and impulse behind possessing the small amounts of marijuana found under the stairs in the camper and in the pickup (on the one hand) and the 19 individually wrapped single pound bags (on the other). *Crudo*, 62 Kan. App. 2d at 492. This conclusion was supported by sufficient evidence at trial. Lt. Ricard testified as much, and the physical evidence supported such inferences. Crudo's convictions are not multiplicitous and do not raise double jeopardy concerns because each conviction stemmed from separate conduct and distinct evidence.

*Cumulative Error Does Not Apply*

A single error cannot support reversal by invoking the cumulative error doctrine. *State v. Ballou*, 310 Kan. 591, 617, 448 P.3d 479 (2019). The use of PIK Crim. 4th 57.022 is the only error we found. Cumulative error, by definition, does not apply.

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

ROSEN, J., concurring: I join most of the court's opinion and concur in its result. I write separately because, consistent with the dissenting opinion and concurring opinion in *State v. Hubbard*, 309 Kan. 22, 430 P.3d 956 (2018), and *State v. Sasser*, 305 Kan. 1231, 391 P.3d 698 (2017), both of which I joined, I would conclude the district court erred when it admitted as lay testimony the officer's statements regarding wholesale prices of marijuana across the country and the patterns and activities of drug trafficking.

A lay witness may testify on "relevant or material matter" in which the witness has "experience, training or education." K.S.A. 60-419. But their testimony is limited to that which is not based on "scientific, technical or other specialized knowledge." K.S.A. 2022 Supp. 60-456(b). In that case, the witness must qualify as an expert by meeting requirements geared toward ensuring some legitimacy to the special testimony. K.S.A. 2022 Supp. 60-456(b); see *State v. Lyman*, 311 Kan. 1, 21-22, 455 P.3d 393 (2020) (explaining K.S.A. 60-456[b] adopts federal *Daubert* standard for establishing reliability of expert testimony). And the party intending to offer the expert witness must give notice and provide a description prior to trial or risk the court prohibiting its admission. K.S.A. 2022 Supp. 22-3212(i).

In *Sasser*, a majority of this court held that a lay witness was not testifying based on specialized knowledge when he opined on future repair costs of a motorcycle. *Sasser*, 305 Kan. at 1246-47. I disagreed because "the knowledge required to form such an opinion is outside the common experience of laypersons—as compared, for example, to a lay witness' estimate of how fast a vehicle was travelling or whether an individual appeared to be intoxicated." 305 Kan. at 1249 (Biles, J., concurring in part and dissenting in part). The dissenting/concurring opinion explained that "[t]he problem, of course, is that no person—witness or juror—without specialized knowledge of motorcycle repair

16

could conclude from the details, i.e., a visual depiction of the damages, that the value of those damages exceeded $1,000." *Sasser*, 305 Kan. at 1250 (Biles, J., concurring in part and dissenting in part).

In *Hubbard*, the majority held a district court made no error in characterizing as lay testimony officers' statements that they had smelled the odor of raw marijuana upon approaching a house. 309 Kan. at 43. Again, I disagreed because the officers' opinion the odor was raw marijuana stemmed from their exposure to raw marijuana during police training and subsequent casework. The dissent reasoned "[t]his uncontroverted dependency between the officers' training and experience on the one hand and the opinions they expressed on the other hand qualified their testimony about detecting the strong, potent, or overwhelming odor of raw marijuana as expert opinion testimony." *Hubbard*, 309 Kan. at 50 (Beier, J., dissenting).

In this case, Lieutenant Ricard testified that a pound of marijuana grown and sold on the West Coast costs between $1,200 and $1,600. He further opined that the same marijuana would sell for between $4,500 and $6,000 if transported to the East Coast. The Lieutenant went on to inform the jury that people trafficking drugs purchase marijuana in the western states and attempt to quickly transport it to the East Coast while trying to spend as little time on the roadways as possible. Lieutenant Ricard testified that he knows this information based on his specific training regarding bulk marijuana trafficking. Because this knowledge is based on his training and outside the purview of the average juror, I would conclude it was "specialized" and inadmissible as lay testimony. See *United States v. Figueroa-Lopez,* 125 F.3d 1241, 1245-46 (9th Cir. 1997) (testimony about "techniques employed by drug dealers in their illegal trade" was "specialized knowledge" that could not be admitted as lay testimony because "ordinary juror would most probably be unfamiliar" with the "techniques"); *United States v. Markum*, 4 F.3d 891, 896 (10th Cir. 1993) ("specialized knowledge" within federal rule upon which Kansas' statute is based is "knowledge beyond the ken of the average juror"); *State v.*

17

*Rothlisberger*, 147 P.3d 1176, 1185 (Utah 2006) (describing "specialized knowledge" in rule identical to statute in Kansas as "knowledge 'with which lay persons are not familiar'").

A majority of this court disagrees. They acknowledge the Lieutenant formed his opinions based on his training and experience and that "lay testimony cannot be 'based on scientific, technical or other specialized knowledge.'" Slip op. at 10 (quoting K.S.A. 2022 Supp. 60-456). But they hold the district court made no error in concluding this was not "specialized knowledge" because a lay person could easily get ahold of that knowledge. The majority reasons that the legalization of marijuana across the country has made "[i]nformation about price . . . discoverable and readily available." Slip op. at 11. While this may be true when it comes to the price of *legally* grown and distributed marijuana, I cannot see how that information informs the public about the wholesale price of *illegally* grown marijuana, especially that which is grown on one side of the country and sold on another. The majority also reasons the Lieutenant's testimony that marijuana is purchased in the western part of the country and driven to the east as quickly as possible is "not so obviously outside the scope of lay opinion evidence" to make it specialized knowledge. Slip. op at 11. I again disagree. Where is the average juror getting information about the patterns and tendencies of people illegally trafficking drugs? I do not know, and the majority does not say.

I agree with the majority that knowledge based on training and experience does not, *ipso facto*, elevate a witness' statements to testimony based on specialized knowledge. An officer likely learns some general first aid during their training, but an officer's testimony that they observed a shallow cut on a victim cannot be considered specialized knowledge. Most people suffer shallow cuts throughout their life; the ability to recognize one is not special, even if shallow cuts were covered in one's job training.

18

But the Lieutenant's ability to opine on the nature of drug trafficking and the cost of illegal drugs across the county is special. The average juror does not partake in this activity or encounter this type of training. I would rule that the district court abused its discretion when it admitted this evidence as lay opinion testimony instead of characterizing it as expert testimony subject to the admission prerequisites in K.SA. 2022 Supp. 60-456 and K.S.A. 2022 Supp. 22-3212(b)(2).

I would, however, affirm the conviction because I believe the admission of the testimony was harmless under any applicable harmlessness inquiry. The weight of the remaining evidence convinces me beyond a reasonable doubt that the court's error did not affect the outcome of the trial. *State v. Gaona*, 293 Kan. 930, 949, 270 P.3d 1165 (2012) (considering whether admission error under K.S.A. 60-456[b] was harmless under statutory harmless error standard, which requires reversal if there is a reasonable probability the error will or did affect outcome of trial); *State v. Ward*, 292 Kan. 541, 569-70, 256 P.3d 801 (2011) (error that infringes upon constitutional right harmless if benefitting party proves no reasonable possibility error affected verdict).

LUCKERT, C.J., joins the foregoing concurrence.