NOT DESIGNATED FOR PUBLICATION

No. 125,782

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RAY C. ATKINS JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; JAMES R. FLEETWOOD, judge. Submitted without oral argument. Opinion filed March 7, 2025. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Jon Simpson*, senior assistant district attorney, *Suzanne Valdez*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before HILL, P.J., MALONE and CLINE, JJ.

MALONE, J.: Ray C. Atkins Jr. appeals his conviction of rape. Atkins claims: (1) the jury instruction for rape violates section 5 of the Kansas Constitution Bill of Rights because it failed to apply the mental state of "knowingly" to every element of the offense; (2) alternatively, the jury instruction for rape was clearly erroneous for the same reason; (3) K.S.A. 21-5503(e) unconstitutionally violates due process by making rape a strict liability offense; (4) the district court abused its discretion by allowing the sexual assault nurse examination (SANE) nurse to testify despite the fact that her SANE certification

had lapsed; and (5) cumulative error deprived him of a fair trial. After thoroughly reviewing the record, we find no reversible error and affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On July 11, 2019, A.L.—a 17-year-old high school student—went to Lawrence to spend a few weeks with her older sister (Sister), who was enrolled at the University of Kansas. Their mom (Mother) thought it would be good for the sisters to spend time together; the plan was for A.L. to stay until Sister's birthday on July 23. The day after A.L. arrived, Sister threw a party at her house. During the party, A.L. met Atkins, an acquaintance of Sister's, and she ended up having consensual sex with him that evening.

Later that week, A.L. came down with a fever, body aches, an extremely sore throat, and chills—she suspected that she was coming down with an illness. She ended up going to the hospital and receiving a steroid shot. But A.L. continued to feel ill after leaving the hospital, and she began to have a seizure while sitting in Sister's car at a gas station. Earlier that year, A.L.—who suffers from a brain disorder—had experienced similar seizures that had left her hospitalized for two weeks. A.L. returned to the hospital, where she was treated but released later that evening. After hearing about the ordeal, Mother wanted to come pick up A.L. and bring her back home to Wichita, but A.L. told her that she would be okay with recovering at Sister's house. A.L. spent the next day resting, and although she continued to be in pain, she started to feel better.

On July 19, 2019, two days after the seizure, A.L. felt well enough to go to a pool party with Sister. She recalled "being low key irritated, because [she] was still sick, but [she] didn't want to be at the home alone by [her]self." Atkins also happened to be at the party. A.L., Sister, Atkins, and another man, named Servando "Vonnie" Joel Martinez Vazquez, ended up leaving the party together to go back to Sister's house. When they returned to Sister's house, they all went to hang out in Sister's room. At some point, Sister

2

left to pick up another friend, leaving A.L., Atkins, and Vonnie in her room. Sister would later recall that she was only gone about 15-20 minutes.

According to A.L., Atkins, who was intoxicated, stumbled towards her, then leaned over and tried to kiss her. A.L. resisted and told him to stop. But Atkins ignored her protestations, put himself on top of her and began to try to force his hand into her pants, underneath her underwear. A.L. continued to tell Atkins to stop and unsuccessfully tried to push him off her. She tried to get Vonnie, who was also in the room, to help her, but he got up and left—"he was like, that's not my problem." Once Vonnie had left, Atkins fully put his weight on A.L. and forced his finger inside her vagina. She could feel his fingernails scraping her. At that point, A.L. went numb, but she continued to try to fight Atkins off, biting him in her attempt to get free. But Atkins did not stop and instead proceeded to penetrate her vagina with his penis. According to A.L., "[A]t that point I was just laying there because I didn't know what else to do. Then he pulled out, and I don't know why he stopped." After Atkins stopped, A.L. tried to leave the room but Atkins insisted that she wait until Sister returned.

When Sister returned to the house, she went back to her room. A.L. pushed past her and went and locked herself in another room. Once she was alone, A.L. called her best friend to tell her what had happened and stayed on the phone with her for the rest of the night. At some point, A.L. texted Mother, asking her if she could come pick her up because she and Sister were not getting along. Mother told her that she would not be able to come until the next day. A.L. stayed alone in the room that night.

The next morning, A.L. did not tell Sister about what had happened with Atkins but asked Sister to take her to a clinic so she could get examined for a potential sexually transmitted disease because she was experiencing burning and itching in her genitals. Sister and A.L. unsuccessfully tried to find a clinic where A.L. could be seen without

3

needing parental permission or using her health insurance because she did not want Mother to find out about the assault.

The next day, Mother came from Wichita to pick up A.L. After A.L. left with Mother, she told Sister via text that Atkins had forced himself on her. A.L. recalled later telling Sister that she "had told [Atkins] no. [But she] didn't know if you could be raped by somebody, you know, putting their fingers in you, or if that would even be considered rape because we had had sex before."

A.L. did not tell Mother what had happened initially, but she told her while they were headed to a therapy appointment a couple of days later on July 23, 2019. She told Mother that she thought she had been raped, describing Atkins' assault and her concerns that she may have contracted an STD. Mother immediately took A.L. to Saint Joseph's Hospital in Wichita because she knew that they had a center to treat and document sexual assaults. A.L. received a sexual assault examination from a nurse and gave a statement to law enforcement officers. While the investigation was initially handled by officers from Wichita, the case was soon turned over to the Lawrence Police Department. Police officers from Lawrence eventually interviewed Atkins, who admitted to having sex with A.L. but claimed the encounters were consensual.

On July 20, 2020, the State charged Atkins with one count of rape, alleging that he had unlawfully, feloniously, and knowingly engaged in sexual intercourse with A.L., without her consent while she was overcome by force or fear. The district court held a preliminary hearing and Atkins was bound over for trial.

On August 8, 2022, the parties proceeded to trial, where the State called Sister, Mother, various investigating police officers, the nurse who conducted A.L.'s sexual assault examination, a KBI forensic scientist, and finally A.L. to testify. Several officers

4

from both Wichita and Lawrence testified about their interviews with Atkins, A.L., Vonnie, Mother, and Sister. Officer Aaron Jay Mattson recalled A.L. detailing the assault, explaining that Atkins had forcibly kissed her, pushed her down on the bed, held back her hands, pulled her pants down, and penetrated her with his fingers and penis. She told him and another officer that Vonnie was in the room with her and Atkins at the time, but he refused to help her. A.L. went into significant detail about Atkins' actions in her interview with law enforcement, which was recorded and presented to the jury. Two other officers testified about their interview with Atkins, and the State presented a recording of that interview. Finally, Randy Coffman, the nurse who examined A.L., testified that she found multiple lacerations around A.L.'s perineal area, a laceration on her labia majora, an abrasion on her labia minora. That said, the report from the exam noted that the testing came back negative for any seminal fluid—no DNA testing was performed on the samples.

Atkins called Vonnie, who testified that he never saw Atkins sexually assault A.L. or do anything sexually inappropriate with her. Vonnie testified that he would never try to cover for Atkins because he had family members who had been victims of sexual violence. Atkins also called Jennifer Johnson, a board-certified women's health nurse practitioner, who had reviewed Coffman's SANE report and other case files. Johnson testified that she disagreed with Coffman's diagnosis of A.L.'s injuries, noting that she believed the lacerations to be herpetic lesions, not traumatic injuries from a sexual assault. That said, Johnson explained there was no way to medically determine from the examination whether a sexual assault had or had not occurred.

The district court held an instruction conference after both parties had presented their cases. Atkins' proposed jury instructions, including the instruction on the elements of rape, closely matched the instructions the district court gave to the jury.

5

After hearing the evidence and the closing arguments, the jury found Atkins guilty of rape. The district court sentenced Atkins to 155 months' imprisonment but granted his motion for a dispositional departure to probation for 60 months. In granting the departure, the district court credited the testimony of a clinical psychologist who determined Atkins had an IQ of 73 and the cognitive abilities of a 7- or 11-year-old. Atkins timely appealed.

ANALYSIS

Atkins' first two issues both assert that the jury instruction for rape omitted essential elements of the crime because while it stated that a defendant must knowingly engage in sexual intercourse, it failed to state that the crime of rape also requires proof that the defendant *knew* the victim did not consent and *knew* that the intercourse occurred under circumstances where the victim was overcome by force or fear. In the first issue, Atkins frames his argument as a constitutional challenge, contending the jury instruction constituted a structural error in violation of his right to a jury trial under section 5 of the Kansas Constitution Bill of Rights. He frames the second issue as an instructional error, arguing it should be reviewed for clear error because the instruction omitted necessary elements. Both claims are made for the first time on appeal. While these two issues deal with the same alleged error, we will address the issues separately as Atkins has presented them, especially because the preservation rules are different for each issue.

*Did the Jury Instruction for Rape Violate Section 5 of the Kansas Constitution Bill of Rights?*

Atkins argues that his right to have a jury find every element of the alleged crime, as guaranteed by section 5 of the Kansas Constitution, was violated by the omission of essential elements from the jury instruction on rape. He asserts that the instruction should have told the jury that the State was required to prove not only that he knowingly engaged in sexual intercourse with A.L., but also that he knew she did not consent and

6

that he knew she was overcome by force or fear. He contends that because section 5 provides that the right to a jury trial is "inviolate," the district court's failure to include "knowingly" in the second and third elements was a structural error requiring reversal because these were essential elements of the offense.

The State contends that this court should decline to address Atkins' constitutional argument because it is unpreserved. Alternatively, the State maintains that Atkins' argument is misplaced, misreads K.S.A. 21-5503(a)(1)(A), and is based on a strained interpretation of Section 5 that runs contrary to established caselaw.

We begin by addressing the State's preservation argument. Atkins concedes that he did not raise this issue before the district court. Generally, this would bar him from asserting this issue for the first time on appeal. *State v. Green*, 315 Kan. 178, 182, 505 P.3d 377 (2022). Constitutional grounds for reversal asserted for the first time on appeal are not properly before an appellate court for review. *State v. Holley*, 315 Kan. 512, 524, 509 P.3d 542 (2022). There are several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, including the following: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the district court was right for the wrong reason. *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021). Atkins asserts that the first two exceptions apply here.

But even if these exceptions apply, we need not address Atkins' constitutional challenge—the decision to review an unpreserved claim under an exception is a prudential one. *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020). The Kansas Supreme Court was recently asked to reach an unpreserved, section 5-based argument but declined do so, explaining that the defendant's argument presented a novel and

7

consequential issue, for which argument and an analysis from the district court would have been helpful. *State v. Huggins*, 319 Kan. 358, 362, 554 P.3d 661 (2024). *Huggins* is no anomaly. See *State v. Genson*, 316 Kan. 130, 135-36, 513 P.3d 1192 (2022) (affirming Court of Appeals' refusal to consider newly raised claim that failure-to-register statute's criminalization of conduct without a culpable mental state violates a defendant's section 5 right to a jury trial); *State v. Caldwell*, No. 124,476, 2022 WL 17174569, at *2-3 (Kan. App. 2022) (unpublished opinion) ("Through his inaction at the trial level, Caldwell waived [the] argument" that jury-instruction error "violated his right to a jury trial under section 5 of the Kansas Constitution Bill of Rights.").

As in *Huggins*, Atkins' failure to raise the issue below deprives this court of helpful briefing and insights from the district court. Parallel to that point, Atkins had the chance to present his constitutional argument during the instructions conference and failed to do so. Although Atkins now claims the instruction constitutes a structural error under the Kansas Constitution, he not only agreed to the instructions as written but proposed a nearly identical instruction with the same alleged error. Finally, even if we decline to address this issue as a constitutional challenge, we still have the opportunity to consider Atkins' argument—that the offense of rape under K.S.A. 21-5503(a)(1)(A) requires proof that the defendant knew the victim did not consent and knew the victim was overcome by force or fear—as an instructional error in the next section of this opinion. For these reasons, we decline to address Atkins' constitutional challenge for the first time on appeal and will address the matter only as an instructional issue.

*Was the Jury Instruction for Rape Clearly Erroneous?*

Atkins argues that even if his constitutional rights were not violated by the rape instruction, the district court erred by failing to instruct the jury as to all the essential elements of the crime. He contends his conviction must be reversed because it was

clearly erroneous for the instruction to fail to explain that the jury had to find that he *knew* that A.L. did not consent and that he *knew* that she was overcome by force.

The State asserts that Atkins is barred from raising the issue because he invited the error he now complains of—the district court's final instruction mirrored his own proposed instruction, and he did not raise his current argument during the instruction conference. Alternatively, the State contends that the instruction was not erroneous—let alone clearly erroneous—because it mirrored the language of K.S.A. 21-5503 and was nearly identical to the applicable pattern instruction (PIK Crim. 4th 55.030 [2022 Supp.]). The State also argues that any error in the instruction would not have changed the jury's verdict. Atkins has not filed a reply brief to respond to the State's invited error claim.

When analyzing jury instruction issues, appellate courts follow a three-step process: (1) determining whether the appellate court can or should review the issue, in other words, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits of the claim to determine whether error occurred below; and (3) if an error occurred, assessing whether it requires reversal. *State v. Holley*, 313 Kan. 249, 253, 485 P.3d 614 (2021).

At the second step, appellate courts consider whether the instruction was legally and factually appropriate, using an unlimited standard of review of the entire record. 313 Kan. at 254. In determining whether an instruction was factually appropriate, courts must determine whether there was sufficient evidence, viewed in the light most favorable to the requesting party, that would have supported the instruction. 313 Kan. 255.

Even if Atkins establishes that an error occurred, because he is raising the instructional error for the first time on appeal, we will only reverse if that error is clearly erroneous. *State v. Jarmon*, 308 Kan. 241, 244, 419 P.3d 591 (2018); see also K.S.A. 22-

3414(3) ("No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict . . . unless the instruction or the failure to give an instruction is clearly erroneous."). "Clear error exists when the court is firmly convinced the outcome would have been different had the instruction been given. [The defendant] bears the burden to establish that, and this court's review is de novo based on the entire record." *State v. Moore*, 319 Kan. 557, 570, 556 P.3d 466 (2024). "This standard applies with equal force when the defendant fails to object to an instruction that omits an element of a crime. *Jarmon*, 308 Kan. at 244.

We will first address the State's claim of invited error. Atkins submitted a proposed jury instruction on the rape charge that—in terms of the elements of the crime—was identical to the instruction the district court gave to the jury. The proposed instruction did not explain that the jury had to find that Atkins *knew* that A.L. did not consent and that he *knew* that she was overcome by force. In other words, Atkins' proposed instruction included the same alleged error he now complains about on appeal.

"Under the invited error doctrine, a litigant may not invite error and then complain of that same error on appeal." *State v. Willis*, 312 Kan. 127, 131, 475 P.3d 324 (2020). While the doctrine is not applied in a formalistic manner in the context of jury instruction challenges, our Supreme Court has refused to consider a claim of instructional error when the district court gave an instruction that the defendant had requested at trial. *State v. Pattillo*, 311 Kan. 995, 1015, 469 P.3d 1250 (2020) ("We hold the invited-error doctrine will generally apply when a party requests the instruction before trial, the error was as obvious before trial as when the judge gave the instruction, and the party did not present to the trial judge the same objection as made on appeal."); see *State v. Fleming*, 308 Kan. 689,707, 423 P.3d 506 (2018) (finding invited error precluded review of claimed jury instruction error under facts including defendant's pretrial request for the instruction).

10

Atkins proposed the instruction he now complains about before trial and nothing at trial changed the contours of the legal argument he is now raising on appeal. Atkins' trial counsel could have determined before trial that the judge should alter the pattern instruction in the manner he now suggests—especially considering that Atkins contends the issue is either a structural error impacting his constitutional rights or so impactful that the jury would have reached a different result had it not occurred. Under *Pattillo*, we could find that these circumstances support the State's claim that Atkins invited the error.

But in a recent case, the Kansas Supreme Court held that the application of the invited error doctrine "'turns on whether the instruction would have been given—or omitted—but for an affirmative request to the court for that outcome later challenged on appeal.'" *State v. Peters*, 319 Kan. 492, 516, 555 P.3d 1134 (2024) (declining to find invited error even when defendant rejected district court's offer to instruct on lesser offenses). "The ultimate question is whether the record reflects the defense's action in fact induced the court to make the claimed error." *State v. Douglas*, 313 Kan. 704, 708, 490 P.3d 34 (2021). Under this but-for logic, we cannot tell one way or the other from the record whether Atkins' action in fact induced the district court to make the claimed error. Given the fuzzy guidance from our Supreme Court on the application of the invited error doctrine, we will address the merits of Atkins' argument on instructional error.

Atkins argues the rape instruction was legally inappropriate because it failed to state that the jury had to find that Atkins knew that A.L. did not consent or that he knew that she was overcome by force or fear. If Atkins is correct that the rape instruction omitted an essential element, then the instruction was legally erroneous. *State v. Sinnard*, 318 Kan. 261, 291, 543 P.3d 525 (2024) ("[T]he district court has the duty to inform the jury of every essential element of the crime charged."). Considering that Atkins' first three issues on appeal involve asserted jury instruction errors, it would have been handy for Atkins to include the district court's jury instructions in the record on appeal, which

11

he failed to do. But we have a transcript of the instructions the trial judge read to the jury, so we will go by that. The trial judge instructed the jury on the rape charge as follows:

"[Jury instruction] Number 10: The defendant is charged in Count I with rape. The defendant pleads not guilty. To establish this charge, each of the following claims must be proved. One, Ray C. Atkins, Junior, knowingly engaged in sexual intercourse with [A.L.].

"Two, [A.L.] did not consent to sexual intercourse. Three, the sexual intercourse occurred under circumstances when [A.L.] was overcome by force.

"Number four, this fact occurred on or about the 19th day of July 2019 in Douglas County, Kansas.

"Sexual intercourse mean any penetration of the female sex organ by a finger or the male sex organ, any penetration, however slight, is sufficient to consider, to constitute sexual intercourse.

"It is not a defense that the defendant did not know or have reason to know that [A.L.] did not consent to the sexual intercourse. It is not a defense that the defendant did not know or have reason to know that [A.L.] was overcome by fear.

"The State must prove that the defendant committed the crime knowingly. A defendant acts knowingly when the defendant is aware of the nature of his conduct that the State complains about, or the circumstances in which he was acting or that his conduct was reasonably certain to cause the result complained about by the State."

In comparison, K.S.A. 21-5503 provides in part:

"(a) Rape is:

(1) knowingly engaging in sexual intercourse with a victim who does not consent to the sexual intercourse under any of the following circumstances:

(A) When the victim is overcome by force or fear; or

(B) when the victim is unconscious or physically powerless;

. . . .

"(e) Except as provided in subsection (a)(2), it shall not be a defense that the offender did not know or have reason to know that the victim did not consent to the

12

sexual intercourse, that the victim was overcome by force or fear, or that the victim was unconscious or physically powerless."

A comparison of the statute and the jury instruction shows that the portion of the instruction Atkins objects to mirrors Kansas' rape statute. A jury instruction is legally appropriate when it follows the language of the criminal statute. *State v. Thomas*, 313 Kan. 660, 663, 488 P.3d 517 (2021) ("Because jury instruction No. 5 mirrored the statute under which Thomas was charged, it was legally appropriate."); *State v. Plunkett*, 261 Kan. 1024, 1030-31, 934 P.2d 113 (1997). Although we could end our analysis here, we will address Atkins' claim more thoroughly.

Atkins contends that the structure of K.S.A. 21-5503(a)(1)—specifically the fact that knowingly leads off the definition—signifies that the required mental state of knowingly must apply to every element of the crime of rape. The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State v. Keys*, 315 Kan. 690, 698, 510 P.3d 706 (2022). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. 315 Kan. at 698. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. 315 Kan. at 698.

As Atkins recognizes, no court has read K.S.A. 21-5503(a)(1) to mean that the mental state of knowingly must apply to every element of the crime of rape, perhaps because such an interpretation is unsupported by the plain language of the statute. In *Plunkett*, which involved a challenge to an older version of the rape statute, the Kansas Supreme Court explained: "[The rape statute] does not require proof that the defendant intended to have nonconsensual intercourse. The statute requires proof that the defendant

13

had sexual intercourse without the victim's consent when the victim was overcome by force or fear." 261 Kan. at 1030-31.

While *Plunkett* was decided before the enactment of the current version of the statute (which added the mental state of knowingly), this court has relied on *Plunkett*'s analysis in addressing a related challenge, concluding that to secure a conviction for rape the State only needs to prove that a defendant "knowingly" engaged in sexual intercourse—not their knowledge of whether the victim consented or was overcome by force or fear—because the statute does not contain any other mental state. *State v. Thomas*, No. 119,240, 2019 WL 3977820, at *6-7 (Kan. App. 2019) (unpublished opinion). As noted above, in reviewing the *Thomas* panel's analysis, the Kansas Supreme Court agreed that the instruction (which, apart from the name of the victim is identical to the one given in this case) was legally appropriate because it mirrored the language of K.S.A. 21-5503. *Thomas*, 313 Kan. at 663.

Moreover, as we will discuss in the next section of this opinion, Atkins' argument runs counter to the language in K.S.A. 21-5503(e). This subsection explicitly states that it is not a defense that the defendant "did not know or have reason to know that the victim did not consent to the sexual intercourse [or] that the victim was overcome by force or fear." This court has observed that when the Legislature added the language now found in subsection (e), along with the phrase "knowingly engaging in" now found in subsection (a)(1), it did so to make clear that only general intent is required. *State v. Massey*, No. 121,638, 2020 WL 6811991, at *6 (Kan. App. 2020) (unpublished opinion). Upon reviewing the recommendations of the Kansas Criminal Code Recodification Commission in its report to the 2010 Legislature, the *Massey* panel noted:

> "In commenting on subsection (e), which was originally subsection (d) before later unrelated 2011 amendments, the Commission explained that it was 'added *to clarify that the offender need not know . . . that the victim did not consent, was overcome by*

14

*force or fear*, or was unconscious or physically powerless.'" Kansas Criminal Code Recodification Commission: 2010 Final Report to the Kansas Legislature, Appx. A, pp. 82-83." (Emphasis added.) 2020 WL 6811991, at *6.

In sum, to read "knowingly" into every element of the offense as Atkins suggests would not only add something to the statute that is not readily found in its words, but it would also directly conflict with subsection (e). Atkins' instruction-based argument fails because the district court provided an instruction on the rape charge that mirrored the statutory language. The instruction did not omit any essential elements of the offense. We agree with the State that the jury instruction on the rape charge was not erroneous—let alone clearly erroneous—because it mirrored the language of K.S.A. 21-5503 and was nearly identical to the applicable pattern instruction at PIK Crim. 4th 55.030.

*Does K.S.A. 21-5503(e) Unconstitutionally Violate Due Process by Making Rape a Strict Liability Offense?*

Next Atkins argues that K.S.A. 21-5503(e) violates due process because it removes the knowingly mens rea element from the crime of rape, making the crime a strict liability offense. Although Akins frames the issue as a constitutional challenge, he mainly argues it as a jury instruction issue under the clearly erroneous standard of review. The State responds that Atkins' argument fails whether it is treated as an instructional error or constitutional challenge.

To the extent Atkins is challenging the jury instruction's inclusion of the language of K.S.A. 21-5503(e), he may do so for the first time on appeal. *State v. Hilyard*, 316 Kan. 326, 333, 515 P.3d 267 (2022). As explained above, when a defendant does not object to an instruction, we will only reverse for clear error—that is, only if the court is convinced that the jury would have reached a different verdict if the instructional error had not occurred. See *State v. Martinez*, 317 Kan. 151, 162, 527 P.3d 531 (2023).

15

Our analysis of Atkins' instruction-based claim is similar to the last issue. The district court's instruction on the rape offense stated in part: "It is not a defense that the defendant did not know or have reasons to know that [A.L.] did not consent to the sexual intercourse. It is not a defense that the defendant did not know or have reason to know that [A.L.] was overcome by fear." This portion of the instruction mirrored both the pattern instruction at PIK Crim. 4th 55.030 and the statutory language of K.S.A. 21-5503(e), which provides "*it shall not be a defense that the offender did not know or have reason to know that the victim did not consent to the sexual intercourse*, that the victim was overcome by force or fear, or that the victim was unconscious or physically powerless." (Emphasis added.) As noted above, a jury instruction is legally appropriate when it follows the language of the criminal statute verbatim. See *Thomas*, 313 Kan. at 663. We find that Atkins' instruction-based argument fails because the instruction on the rape charge mirrored the statutory language of K.S.A. 21-5503(e).

Turning to Atkins' due process-based argument, the State first argues that Atkins lacks standing to challenge subsection (e)'s constitutionality under the facts of this case because Atkins' "it-never-occurred defense never asked the jury to question whether he knew he forced [A.L.] into nonconsensual sex." We disagree with the State's argument on standing. Atkins did not claim that he never had sex with A.L. Instead, Atkins admitted to law enforcement that he had sex with A.L. but maintained it was consensual. Under these facts, Atkins would have standing to challenge subsection (e)'s constitutionality.

The State also asserts that Atkins' constitutional claim is unpreserved. We agree. Atkins did not raise his constitutional claim concerning K.S.A. 21-5503(e) in district court. He makes no attempt to comply with Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36) to explain why an issue that was not raised below should be considered for the first time on appeal. Atkins' constitutional claim is inadequately briefed and therefore waived or abandoned. *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015).

16

Finally, for the sake of completeness, Atkins' constitutional challenge to K.S.A. 21-5503(e) is foreclosed by the Kansas Supreme Court's holding in *Thomas*, 313 Kan. at 663-64. The *Thomas* court found that it was not unconstitutional for the Legislature to adopt strict liability criminal offenses and that K.S.A. 21-5503(e) did not violate the defendant's constitutional due process rights. 313 Kan. at 663-64. This court is duty bound to follow Kansas Supreme Court precedent absent some indication that the Supreme Court is departing from its previous position. *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022). Atkins fails to acknowledge *Thomas*, let alone argue that there is any indication that the Kansas Supreme Court is departing from its holding that K.S.A. 21-5503(e) does not violate a defendant's due process right to have the State prove every element of an offense beyond a reasonable doubt.

*Did the District Court Abuse Its Discretion by Allowing the SANE Nurse to Testify Despite the Fact that her SANE Certification had Lapsed?*

Atkins claims the district court abused its discretion by allowing Coffman, the SANE nurse who examined A.L.'s injuries, to testify despite the fact that her SANE certification had lapsed because of her failure to complete the continuing education requirements. The State argues that the district court correctly ruled that Coffman's training and experience qualified her to testify about her findings from examining A.L. The State asserts that a witness' expertise is not gained by certification alone. Finally, the State argues that any error in the admission of Coffman's testimony was harmless.

"'Whether a witness—expert or layperson—is qualified to testify as to an opinion is to be determined by the trial court in the exercise of its discretion.'" *State v. Crudo*, 318 Kan. 32, 37, 541 P.3d 67 (2024). When analyzing a district court's decision to admit or exclude expert testimony under K.S.A. 60-456(b), an appellate court evaluates (1) whether the district court properly performed its gatekeeper role by using the correct legal standard governing the admissibility of expert testimony, and (2) whether the expert

17

is qualified to render an opinion, and that opinion is sufficiently relevant and reliable. *State v. Aguirre*, 313 Kan. 189, 198, 485 P.3d 576 (2021). An abuse of discretion will only be found if the district court's decision was based on an error of fact or law, or if the decision was arbitrary, fanciful, or unreasonable. *Crudo*, 318 Kan. at 37.

Under K.S.A. 2024 Supp. 60-456(b), "a witness who is qualified as an expert by knowledge, skill, experience, training or education" may testify in the form of an opinion. Atkins' claim focuses solely on Coffman's qualification as an expert on SANE examinations—he does not contest whether her testimony was relevant or reliable. Atkins acknowledges that a witness need not be certified in a field to be an expert witness on the matter—the only requirement is that the witness be *qualified* to offer an opinion.

Coffman testified that she had been a forensic nurse since 1995, and had performed about 20 such exams per year since that time. She specified that she was at some point certified as a sexual assault nurse examiner and maintained that certification for six years between 2003 and 2009 but had since let that certification lapse. But she maintained that a SANE certification is not a requirement to perform SANE exams in Kansas. And despite her lapsed SANE certification, Coffman maintained both her registered nurse credentials and her forensic nursing position at the St. Joseph Hospital in Wichita. When asked by Atkins' attorney about her qualifications to testify as an expert about SANE and her examination of A.L., Coffman replied, "What allows me to testify is that I am a forensic nurse and I have had experience and training."

Atkins does not quibble with Coffman's years of experience performing SANE examinations or her education and training to perform such examinations. He relies merely on the fact that she let her SANE certification lapse to support his argument that the district court's decision was unreasonable. He argues that Coffman, who did not need to maintain such certification to perform SANE examinations, was not qualified to testify

18

about the exam—that is, that Coffman had enough expertise and training to perform the exam on A.L. but not to explain the results to the jury.

Atkins' argument runs counter to the language in K.S.A. 2024 Supp. 60-456(b), which contains a broad list of qualifications permitting a person to testify as an expert witness including "knowledge, skill, experience, training or education." The statute does not include a certification requirement to qualify as an expert. This court has found no abuse of discretion in allowing similarly trained nurses to give similar testimony about SANE examinations. See *State v. Humphrey*, 30 Kan. App. 2d 16, 22-24, 36 P.3d 844 (2001); see also *State v. Gay*, No. 107,433, 2013 WL 517828, at *6-7 (Kan. App. 2013) (unpublished opinion) (finding district court did not abuse discretion in determining that nurse's training and experience qualified her to give expert testimony "about the clinical findings she made in examining [the victim] and whether what she saw was 'consistent with' sexual assault"). We find the district court did not abuse its discretion in allowing Coffman to testify about the process and results of her SANE examination based on her knowledge, skill, training, and experience.

Moreover, we agree with the State that any error in the admission of Coffman's testimony would have been harmless. Before a Kansas court can declare an error harmless, it must determine whether the error affected a party's substantial rights, meaning that it will not or did not affect the trial's outcome. The degree of certainty by which the court must be persuaded that the error did not affect the outcome of the trial will vary depending on whether the error implicates a right guaranteed by the federal constitution. Atkins does not assert that the admission of Coffman's testimony violated his federal constitutional rights. "If a right guaranteed by the United States Constitution is not implicated, a Kansas court must be persuaded that there is no reasonable probability that the error will or did affect the outcome of the trial." *State v. Ward*, 292 Kan. 541, 565, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012).

19

As the State points out, Coffman's testimony was far from critical to undermining Atkins' defense. Coffman's opinions that A.L.'s genital examination showed multiple injuries provides some corroboration of A.L.'s account of forcible rape. But even Coffman made clear she could testify only "if there's injuries or not." Coffman admitted that consensual sex "could have" caused the injuries she observed. And Coffman testified that from a medical perspective, she had no way of knowing exactly how or when A.L.'s injuries occurred. Even by A.L.'s account, she had consensual sex with Atkins one time.

Atkins also presented the testimony of Johnson, a board-certified nurse practitioner, who reviewed Coffman's SANE report and other casefiles. Johnson testified that she disagreed with Coffman's diagnosis of A.L.'s injuries, noting that she believed the lacerations to be herpetic lesions, not traumatic injuries from a sexual assault. Thus, Atkins largely made the credibility of Coffman's findings dependent on A.L.'s credibility. That is precisely the battle he would have waged had Coffman not testified. We are persuaded there is no reasonable probability that Coffman's testimony affected the outcome of the trial in light of the entire record and any error would have been harmless.

*Did Cumulative Error Deprive Atkins of a Fair Trial?*

Finally, Atkins argues cumulative error deprived him of a fair trial. Cumulative trial errors, when considered together, may require reversal of a defendant's conviction when the totality of the circumstances establish that the defendant was substantially prejudiced by the errors and denied a fair trial. See, e.g., *State v. Alfaro-Valleda*, 314 Kan. 526, 551, 502 P.3d 66 (2022). But the cumulative error doctrine does not apply when there is no error or only one error. *State v. Sieg*, 315 Kan. 526, 536, 509 P.3d 535 (2022). Because Atkins has not apprised this court of any trial errors, his argument fails.

Affirmed.

20